OPINION OF THE COURT
Joseph E. Damrath, J.
This is a special proceeding brought before the court pursuant to section 121 of the Agriculture and Markets Law. It is civil in nature and the standard of proof is a fair preponderance of the evidence, rather than proof beyond a reasonable doubt. (Giandalone v Zepieri, 86 Misc 2d 79 [1976].) In essence, the City, which has the burden of proof, must prove that its factual allegations are more probably true than not. (PJI3d 1:23 [2002], and Comment.)
A hearing was held on July 2, 2002. The City alleges that the respondent’s dog “Kincade” is a dangerous dog by virtue of three incidents occurring within the City. The issues to be *274 decided are whether the dog is a dangerous dog, and if so, whether it should be ordered euthanized or confined? After reviewing the law, as well as all the testimony, and having duly deliberated thereon, the court finds that the dog is a dangerous dog within the meaning of the statute. The court further finds that the only reasonable remedy is to order the dog to be euthanized immediately.
Section 108 (24) of the Agriculture and Markets Law, in relevant part, defines a dangerous dog as “any dog which (a) without justification attacks a person and causes physical injury or death, or (b) poses a serious and unjustified imminent threat of harm to one or more persons * * * .”
The evidence is undisputed that on April 17, 2002, after someone commanded “get her,” the dog bit one Brittany Neu as she engaged in horseplay with a friend on Main Street in the City of Hornell. This attack was unjustified and caused physical injury to her, requiring emergency room medical attention.
It is also undisputed that on June 25, 2002, the dog came off the steps of its residence at 324 Canisteo Street in the City and jumped on Dennis O’Dell, who was innocently walking by on the front sidewalk. Although the dog did not bite him, Mr. O’Dell feared the dog was trying to. Thereafter, James Travis, who knew the dog, tried to restrain it. However, the dog charged and “nipped” at him, causing him to back off. Such actions prove the dog poses a serious and unjustified imminent threat of harm to one or more persons.
Accordingly, the petitioner has met its burden of proof, and the court finds that the dog is a dangerous dog within the meaning of both paragraphs (a) and (b) of the statute. This raises the issue of the proper remedy to deal with the dangerous dog.
Although the Agriculture and Markets Law provides a definition to serve as a standard to guide the court in determining whether or not a dog is a dangerous dog, there is no such standard to assist the court in determining whether or not a dog should be ordered euthanized or confined. Moreover, there is no precedent setting case law establishing a standard for guidance. Accordingly, this case may be one of first impression as to whether a dangerous dog should be euthanized or confined, and an obvious starting point would be to utilize the purpose of the law.
The purpose of this portion of the Agriculture and Markets Law is to provide for the protection of persons, property, and *275 other animals from dog attack and damage (see Agriculture and Markets Law § 106). Therefore, this court has determined that the standard it should follow is that which is in the best interest of the public safety and welfare, as opposed to what is in the best interest of the dog or its owners.
Unfortunately, confinement of this dog is not suitable to ensure the safety of the public from it. The testimony also revealed at least two other recent incidents where the dog attacked other people. The respondent rationalizes and justifies all five of these incidents as simple examples of the dog being protective and/or territorial. However, with the possible exception of one (where the respondent was allegedly being attacked), none of these incidents were appropriate for protective or territorial behavior. They were simply examples of an extremely aggressive dog which attacked without provocation. Miss Neu’s attack was preceded by a command to “get her,” evidencing that the dog attacks on command. Mr. O’Dell’s attack occurred after the dog escaped the house by knocking out the window fan. Mr. Travis was a friend who had visited the house and knew the dog; yet the dog attacked him as well. The other incident involved a relative who innocently entered the house and was attacked by the dog.
Ironically, the court is convinced that the dog is of such a disposition, it is not under control unless it is acting aggressively and violently to protect its owners and/or territory. The concern is for the protection and safety of young children who may stray on the dog’s property to retrieve a toy, a passerby on the front sidewalk such as Mr. O’Dell, the mailman, the paperboy, a person coming to the door to ask directions, school children selling cookies, and so on. The list is endless, and includes many innocent people engaging in innocent behavior, who are at risk of attack from this dog. Such a dog should not be harbored within the City, if anywhere at all. People who feel they need such a dog to protect themselves or their property, should re-examine their lifestyles.
Therefore, it is the finding of this court that the public safety and welfare requires the euthanization of this dangerous dog.
By reason of the aforesaid, the dog is a dangerous dog and the dog control officer of the City of Hornell is hereby ordered to euthanize the dog immediately.