[886 NE2d 769, 857 NYS2d 8]

Cedric Fleming et al., Plaintiffs, v Thomas Graham et al., Defendants and Third-Party Plaintiffs-Respondents. Pinstripes Garment Services, LLC, Third-Party Defendant-Appellant.

Argued February 13, 2008; decided March 20, 2008

## POINTS OF COUNSEL

*Baxter, Smith, Tassan & Shapiro, P.C.,* Jericho (*Robert C. Baxter* and *Sim R. Shapiro* of counsel), and *Gregory Allen* for third-party defendant-appellant. I. The Appellate Division, Second Department erred in holding that Pinstripes Garment Services, LLC failed to meet its burden to show that plaintiff did not sustain a "grave injury." (*Castro v United Container Mach. Group,* 96 NY2d 398; *Rubeis v Aqua Club, Inc.,* 3 NY3d 408; *Dunn v Smithtown Bancorp,* 286 AD2d 701; *Way v Grantling,* 289 AD2d 790; *Flores v Lower E. Side Serv. Ctr., Inc.,* 4 NY3d 363; *Meis v ELO Org.,* 97 NY2d 714; *Matter of Board of Educ. of Syracuse City School Dist. v State Div. of Human Rights,* 38 AD2d 245; *Krollman v Food Automation Serv. Techniques, Inc.,* 13 AD3d 1209; *Rosen v Nygren Dahly Co.,* 1 AD3d 998; *Sergeant v Murphy Family Trust,* 292 AD2d 761.) II. Summary judgment should have also been granted because defendant and third-party plaintiff-respondent failed to yield the right-of-way to Pinstripes Garment Services, LLC's approaching vehicle. (*Galvin v Zacholl,* 302 AD2d 965; *Lubitz v Village of Scarsdale,* 31 AD3d 618; *Agin v Rehfeldt,* 284 AD2d 352; *Almonte v Tobias,* 36 AD3d 636; *Gabler v Marly Bldg. Supply Corp.,* 27 AD3d 519; *Stiles v County of Dutchess,* 278 AD2d 304; *Russo v Scibetti,* 298 AD2d 514; *Welch v Norman,* 282 AD2d 448; *Cenovski v Lee,* 266 AD2d 424; *Troche v New York City Tr. Auth.,* 16 AD3d 407.)

*Mauro Goldberg & Lilling LLP,* Great Neck (*Barbara DeCrow Goldberg* and *Anthony F. DeStefano* of counsel), and *Marshall, Conway, Wright & Bradley* for defendants and third-party plaintiffs-respondents. I. It is for the factfinder to determine,

with guidance from this Court, whether Cedric Fleming's facial disfigurement is "severe" enough to constitute a "grave injury." (*Fitzpatrick v Chase Manhattan Bank,* 285 AD2d 487; *Rubeis v Aqua Club, Inc.,* 3 NY3d 408; *Dietrick v Kemper Ins. Co. [American Motorists Ins. Co.],* 76 NY2d 248; *Smith v Mouawad,* 91 AD2d 700; *Matter of Leone v Bricklayers Masons & Plasterers Intl. Union No. 83,* 59 AD2d 812; *Waldron v Wild,* 96 AD2d 190; *Cushing v Seemann,* 247 AD2d 891; *Hutchinson v Beth Cab Corp.,* 204 AD2d 151; *Zulawski v Zulawski,* 170 AD2d 979; *Landsman v Bunker,* 142 AD2d 986.) II. The issue of liability is not properly before this Court. Thus, the Appellate Division correctly affirmed the denial of Pinstripes Garment Services, LLC's motion. In any event, even if this Court considered Pinstripes' arguments on liability on their merits, Pinstripes is still not entitled to summary judgment. (*Herrick v Second Cuthouse,* 64 NY2d 692; *Patrician Plastic Corp. v Bernadel Realty Corp.,* 25 NY2d 599; *Calemine v Hobler,* 263 AD2d 495; *Bogorad v Fitzpatrick,* 38 AD2d 923, 31 NY2d 984; *Young v Mauch,* 268 AD2d 583; *Thomas v Holzberg,* 300 AD2d 10; *Canceleno v Johnston,* 264 AD2d 405; *Bagnato v Romano,* 179 AD2d 713; *Shea v Judson,* 283 NY 393; *Galvin v Zacholl,* 302 AD2d 965.)

**OPINION OF THE COURT**

JONES, J.

The issue in this case is whether plaintiff's facial injuries constituted a "permanent and severe facial disfigurement" for purposes of qualifying as a "grave injury" under Workers' Compensation Law § 11. Under the facts of this case, we hold that they do not.

Following a collision between a van driven by a Pinstripes Garment Services, LLC employee and a school bus driven by an employee of Evergreen Bus Service, Inc., plaintiff Cedric Fleming (a Pinstripes employee and passenger in the van) sustained multiple facial injuries resulting in scars on his forehead and right upper eyelid. Fleming sued Evergreen and its bus driver for negligence. Evergreen commenced a third-party action against Pinstripes for common-law indemnity and/or contribution pursuant to Workers' Compensation Law § 11 on the theory that Fleming sustained a "permanent and severe facial disfigurement." Pinstripes subsequently moved for summary judgment dismissing the third-party complaint on the ground that Fleming's injuries were not "grave."

Supreme Court denied Pinstripes' motion, concluding that questions of fact existed. The court relied on an unsworn report

of the first-party defendant's expert who opined that some of Fleming's scars could not be improved. The court also stated that Fleming's "numerous facial scars . . . [were] plainly visible to the observer" (2005 NY Slip Op 30268[U], *8). The Appellate Division affirmed, concluding that photographs of Fleming's face "did not clearly show that [his] facial scarring was not a severe facial disfigurement" (*Fleming v Graham*, 34 AD3d 525, 527 [2d Dept 2006]). We now reverse.

Absent an express indemnification agreement, or a "grave injury" as enumerated in Workers' Compensation Law § 11,* an employer's liability for an employee's on-the-job injury is ordinarily limited to workers' compensation benefits (*see Tonking v Port Auth. of N.Y. & N.J.*, 3 NY3d 486, 490 [2004]). Where a "grave injury" results, a primary defendant may commence a third-party action against the injured plaintiff's employer for common-law indemnification and/or contribution. This case requires us to articulate a standard for assessing claims of "permanent and severe facial disfigurement."

Our analysis begins and ends with the legislative goal of the Omnibus Workers' Compensation Reform Act of 1996, which enacted the third paragraph of section 11. Before 1996, first-party defendants were free to implead an injured plaintiff's employer in a personal injury action for "unlimited contribution or indemnification" (Governor's Approval Mem, Bill Jacket, L 1996, ch 635, at 54). Allowing such unfettered third-party actions undermined the employer's reliance upon workers' compensation benefits as its exclusive liability.

The purpose of the 1996 legislation was "to reduce costs for employers while also protecting the interests of injured workers" (*Rubeis v Aqua Club, Inc.*, 3 NY3d 408, 415 [2004]). Section 11 thus serves to protect employers by barring third-party

---

* Section 11 states, in part:

"An employer shall not be liable for contribution or indemnity to any third person based upon liability for injuries sustained by an employee acting within the scope of his or her employment for such employer unless such third person proves through competent medical evidence that such employee has sustained a 'grave injury' which shall mean *only one or more of the following*: death, permanent and total loss of use or amputation of an arm, leg, hand or foot, loss of multiple fingers, loss of multiple toes, paraplegia or quadriplegia, total and permanent blindness, total and permanent deafness, loss of nose, loss of ear, *permanent and severe facial disfigurement*, loss of an index finger or an acquired injury to the brain caused by an external physical force resulting in permanent total disability" (emphasis added).

actions against them "except in *extremely* limited, defined circumstances" (*Castro v United Container Mach. Group*, 96 NY2d 398, 402 [2001] [emphasis added]; *see also* Minkowitz, Practice Commentaries, McKinney's Cons Laws of NY, Book 64, Workers' Compensation Law § 11, at 444 ["Section 11 was written with the obvious, deliberate intention of ensuring preservation of the concept of the Workers' Compensation Law being the employer's exclusive liability to its employees"]). The categories of grave injuries listed in section 11, providing the sole bases for a third-party action, "are deliberately both *narrowly and completely described*"; the list, both "exhaustive" and "not illustrative," is "not intended to be extended absent further legislative action" (Governor's Approval Mem at 55 [emphasis added]).

What constitutes "permanent and severe facial disfigurement" is unlike most of the other enumerated "grave" injuries, which are, on the whole, amenable to "objectively ascertainable" determinations as a matter of law (*Rubeis*, 3 NY3d at 417; *see also Meis v ELO Org.*, 97 NY2d 714, 716 [2002] [loss of thumb is not a "permanent and total loss of use" of a hand]; *Castro*, 96 NY2d at 401 [" 'loss of multiple fingers' cannot sensibly be read to mean partial loss of multiple fingers"]). Generally, courts have been able to conclusively say, one way or the other, whether an injury is or is not so "severe" for section 11 purposes (*see e.g. Rosen v Nygren Dahly Co.*, 1 AD3d 998, 998 [4th Dept 2003] [minor facial scarring insufficient as a matter of law]; *Krollman v Food Automation Serv. Techniques, Inc.*, 13 AD3d 1209, 1210 [4th Dept 2004] [three-millimeter scar above eyebrow and "some mottling of her cheeks" insufficient]; *Giblin v Pine Ridge Log Homes, Inc.*, 42 AD3d 705, 707 [3d Dept 2007] [loss of eye, though a permanent condition, not a severe disfigurement where use of prosthesis leaves only negligible alteration in facial appearance]). However, these determinations have been rendered without the aid of a reliable, fairly predictable legal guidepost.

In construing the statute we follow two fundamental principles: first, we implement the intent of the Legislature. Second, we construe statutory words in light of "their plain meaning without resort to forced or unnatural interpretations" (*Castro*, 96 NY2d at 401). The statutory purpose of section 11, as explained above, is clear. Turning to the critical statutory words, we note initially that permanency and severity are both conditions precedent to a finding of "facial disfigurement." With

competent medical evidence, a court may generally determine whether a facial disfigurement is permanent. Severity presents a different inquiry. Consistent with the legislative intent behind section 11, we conclude that "severity" implies a highly limited class of disfiguring injuries beyond minor scarring or lacerations.

"Severe" is variously defined as something "[c]ausing sharp discomfort or distress" (American Heritage Dictionary 1248 [3d ed 2000]) or something "[e]xtremely intense," as in *"severe pain"* (Webster's II New College Dictionary 1012 [1995]; *see also* Webster's Third New International Dictionary, Unabridged [2008] [something "of a *great* degree or an undesirable or harmful extent" (emphasis added)]). Plainly, the specification of "severe" in the statute points to the greater end of the disfigurement spectrum (*see Blackburn v Wysong & Miles Co.*, 11 AD3d 421, 422 [2d Dept 2004] ["(g)rave injury is a statutorily-defined threshold for *catastrophic* injuries" (emphasis added)]).

As for "disfigurement," one definition seems to capture the essence of the word well: "that which impairs or injures the beauty, symmetry or appearance of a person or thing; that which renders unsightly, misshapen or imperfect or deforms in some manner" (*Pilato v Nigel Enters., Inc.*, 48 AD3d 1133, 1135-1136 [4th Dept 2008]; *see also Giblin*, 42 AD3d at 707; *Superior Min. Co. v Industrial Commn.*, 309 Ill 339, 340-341, 141 NE 165 [1923]).

While no conceivable standard can capture in toto the highly limited class of "severe" facial disfigurements contemplated by section 11, we nonetheless conclude that an injury disfigures the face when it detrimentally alters the plaintiff's natural beauty, symmetry or appearance, or otherwise deforms. A disfigurement is severe if a reasonable person viewing the plaintiff's face in its altered state would regard the condition as abhorrently distressing, highly objectionable, shocking or extremely unsightly. In finding that a disfigurement is severe, plaintiff's injury must greatly alter the appearance of the face from its appearance before the accident. The foregoing standard, ordinarily one for the court as a matter of law, removes the inquiry from plaintiff's subjective self-assessment and most closely approximates what the Legislature contemplated.

In this case, Pinstripes demonstrated that no material issue of fact remains and it is thus entitled to summary judgment on the basis that Fleming did not sustain a permanent and severe

facial disfigurement (*see Cox v Kingsboro Med. Group*, 88 NY2d 904, 906 [1996]). The photographs in the record show numerous scars. However, they demonstrate a steady progression from the initial injuries to scarring, to significant recovery. Although first-party defendant's expert implied that Fleming's scars are permanent, his report indicated that revisions were possible. Even aside from the evidentiary value of the report and, indeed, the question of permanency, whether Fleming's disfigurement is "severe" remains for us to decide. While in some cases that question is one properly for the factfinder, we determine that, on the facts of this case, Fleming's injuries do not rise to the level of a "severe" disfigurement. Although there are cases where a reasonable person might view multiple scarring as satisfying the standard we articulate here, this is not one of them.

Accordingly, the Appellate Division order should be reversed, with costs, third-party defendant's motion for summary judgment dismissing the third-party complaint granted and the certified question answered in the negative.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ, SMITH and PIGOTT concur.

Order reversed, etc.