[867 NYS2d 158]

Luis Coque, Appellant-Respondent, v Wildflower Estates Developers, Inc., et al., Respondents-Appellants. (And Third-Party Actions.) (Appeal No. 1.) Luis Coque, Respondent, v Wildflower Estates Developers, Inc., Defendant and Third-Party Plaintiff-Respondent, and Classic Construction, Appellant. City Wide Building Corp., Third-Party Defendant-Respondent. (And Other Third-Party Actions.) (Appeal No. 2.)

Second Department, November 12, 2008

## APPEARANCES OF COUNSEL

*Cardali & Cardali, P.C.*, New York City (*Pollack, Pollack, Isaac & De Cicco* [*Brian J. Isaac*] of counsel), for Luis Coque, appellant-respondent in appeal No. 1 and respondent in appeal No. 2.

*Wilson, Elser, Moskowitz, Edelman & Dicker* (*Shaub Ahmuty Citrin & Spratt LLP*, Lake Success [*Steven J. Ahmuty, Jr.*, and *Timothy R. Capowski*] of counsel), for Wildflower Estates Developers, Inc., respondent-appellant in appeal No. 1 and defendant and third-party plaintiff-respondent in appeal No. 2.

*Milber Makris Plousaidis & Seiden LLP*, Woodbury (*Lorin A. Donnelly* of counsel), for Classic Construction, respondent-appellant in appeal No. 1 and appellant in appeal No. 2.

*Petrocelli & Christy*, New York City (*Richard N. Petrocelli* of counsel), for third-party defendant-respondent in appeal No. 2.

## OPINION OF THE COURT

PRUDENTI, P.J.

Among the issues raised on this appeal is whether an undocu-

mented alien who submitted a fraudulent Social Security card when applying for a job is barred, by virtue of that fact alone, from recovering damages for lost wages when he is injured in the performance of that job. We hold that a worker's submission of false documentation is sufficient to bar recovery of damages for lost wages only where that conduct actually induces the employer to hire the worker, and that this circumstance is not present where the employer knew or should have known of the worker's undocumented status or failed to verify the worker's eligibility for employment as required by federal legislation.

The plaintiff, an undocumented alien from Ecuador, immigrated to the United States in 2000, and was hired as a construction worker by the third-party defendant, City Wide Building Corp. (hereinafter City Wide). On July 10, 2001, the plaintiff was working on a construction project in which town houses were being built by the defendant Wildflower Estates Developers, Inc. (hereinafter Wildflower), the owner of the property, which acted as its own general contractor. Wildflower had hired City Wide to do carpentry work, and had hired the defendant Classic Construction (hereinafter Classic) to do roofing work. The plaintiff was performing his work while standing on a makeshift scaffold, which consisted of two layers of 2-inch-by-10-inch boards, supported at the ends by beams which were part of the structure being built. A bundle of shingles weighing roughly 80 pounds, which had been left on the sloped roof near an opening that had been created for a skylight, fell through the opening and struck the plaintiff in the back. The impact caused the boards on which the plaintiff was standing to break, and the plaintiff fell approximately 25 feet to the basement floor. The plaintiff sustained severe injuries, which rendered him a paraplegic.

The plaintiff commenced this action against Wildflower and Classic, asserting causes of action based on common-law negligence and violations of Labor Law §§ 200, 240 (1) and § 241 (6). The defendants asserted cross claims for indemnification against each other. Wildflower commenced a third-party action for indemnification against City Wide, and City Wide asserted a counterclaim against Wildflower and a cross claim against Classic.

The plaintiff moved for summary judgment on the issue of the defendants' liability pursuant to Labor Law § 240 (1). Wildflower cross-moved for summary judgment on its cross claims against Classic, on its third-party cause of action against

City Wide, and dismissing the complaint insofar as it sought damages for lost wages. The Supreme Court granted the plaintiff's motion as to both defendants, and granted those branches of Wildflower's cross motion which were for summary judgment on its cross claims and its third-party cause of action. On appeal, this Court modified the Supreme Court's order by denying that branch of the plaintiff's motion which was for summary judgment on the issue of Classic's liability pursuant to Labor Law § 240 (1), searching the record and awarding Classic summary judgment dismissing the causes of action alleging a violation of Labor Law § 240 (1), and denying those branches of Wildflower's cross motion which were for summary judgment on its cross claims and its third-party cause of action seeking contractual and common-law indemnification (*see Coque v Wildflower Estates Devs., Inc.*, 31 AD3d 484 [2006]).

This Court's prior decision also addressed an appeal by Wildflower from a separate order in which the Supreme Court, upon reargument, denied that branch of Wildflower's cross motion which was for summary judgment dismissing the complaint insofar as it sought to recover damages for lost wages. The record on appeal revealed that the plaintiff had submitted a Social Security card at the time he was hired by City Wide, and that, although the employment eligibility verification form (Form I-9) completed by City Wide required it to "[e]xamine one document from List A OR examine one document from List B *and* one from List C," the person who completed the Form I-9 on City Wide's behalf indicated that he or she had examined only one document, i.e., the plaintiff's Social Security card, a "List C" document. This Court affirmed the order made upon reargument, reasoning that there was a triable issue of fact as to whether the plaintiff had obtained employment with City Wide by submitting false documentation (*see Coque v Wildflower Estates Devs., Inc.*, 31 AD3d at 487).

Meanwhile, the matter proceeded to trial. The jury was informed that it would be determining who was at fault for the accident, as between Classic and City Wide, and that Wildflower had been found not negligent as a matter of law.

During his testimony, the plaintiff admitted that he was undocumented, and that he had submitted a fraudulent Social Security card to City Wide at the time he was hired. The plaintiff further testified that City Wide paid him for 35 hours of work per week, by check, and for approximately 17 hours of overtime per week, in cash. The plaintiff's supervisor testified that the

plaintiff worked a normal 35-hour week and that City Wide employees almost never worked overtime, but this testimony was contradicted by that of the plaintiff's brother, also an employee of City Wide, who testified that he worked every Saturday.

The plaintiff presented medical evidence demonstrating that his injuries were permanent, that he required constant assistance with the activities of daily living and extensive physical, occupational, and psychological therapy, and that it would be extremely difficult for him to become self-sufficient. There was some medical evidence, which was sharply disputed by the defendants, that the plaintiff suffered traumatic brain injury, which diminished his cognitive functioning to the point where it would be difficult to live independently or maintain employment. According to the plaintiff, his family in Ecuador would be incapable of tending to his needs, and his only opportunity for noninstitutional living in the United States was to move into his brother's home, which was impractical since his brother lived with his wife and children.

At the conclusion of the trial, the jury found that both Classic and City Wide were negligent, but that only Classic's negligence was a proximate cause of the plaintiff's injuries. The jury found that the plaintiff sustained damages in the sums of $42,000 for past lost wages, $60,000 for future lost wages over a period of five years, $500,000 for past pain and suffering, $1,250,000 for future pain and suffering over a period of 42.7 years, and $863,000 for future medical expenses over a period of 22 years, and the parties stipulated that the plaintiff had incurred past medical expenses in the sum of $585,354.

The plaintiff moved pursuant to CPLR 4404 (a), inter alia, to set aside the damages verdict as inadequate. Classic made an oral application pursuant to CPLR 4404 (a) to set aside the jury verdict on the issue of liability as against the weight of the evidence and for a new trial, and renewed its application for a directed verdict on its indemnification claim against City Wide. The Supreme Court denied these motions.

After this Court modified the orders determining the summary judgment motions of the plaintiff and Wildflower, Classic moved in the Supreme Court to set aside the jury verdict on the issue of liability and for a new trial on the issue of liability pursuant to CPLR 4404 (a), since the jury had been instructed, contrary to this Court's later determination, that Classic was liable to the plaintiff under Labor Law § 240 (1) and that Wildflower was not negligent as a matter of law. Classic further

requested that the proposed judgments submitted by Wildflower and City Wide not be entered. In an order entered January 10, 2007, the Supreme Court denied Classic's motion, reasoning that this Court's decision had no effect on the trial of the case and that the verdict was proper. Classic appeals from that order.

On December 22, 2006, prior to its denial of Classic's motion, the Supreme Court entered judgment for the plaintiff and against Wildflower and Classic. The court also entered judgment against Classic on Wildflower's cross claims for indemnification, and dismissed the third-party actions. The plaintiff appeals from the judgment on the ground of inadequacy, seeking a new trial on damages. Classic cross-appeals from the judgment, seeking a new trial on the issue of liability and vacatur of the awards for past and future lost wages, or to dismiss the complaint in its entirety. Wildflower cross-appeals, seeking to vacate the awards for past and future lost wages, or to dismiss the complaint in its entirety.

Relying on *Balbuena v IDR Realty LLC* (6 NY3d 338 [2006]), the defendants contend that, because the plaintiff, an undocumented alien who is ineligible for employment in this country, submitted false documentation when he was hired by City Wide, he was not entitled to any damages for lost wages. Indeed, the defendants suggest that the plaintiff's fraudulent conduct should result in the dismissal of the complaint. A careful reading of the Court of Appeals' decision in *Balbuena* convinces us that the defendants' argument must be rejected.

The Immigration Reform and Control Act of 1986 (8 USC § 1324a; hereinafter the IRCA) makes it unlawful to employ aliens who are not authorized to work in the United States (*see* 8 USC § 1324a [a] [1]). The statute requires that every employer, before hiring any person, verify that the person is not an unauthorized alien by examining specified documents that establish the person's identity and eligibility for employment in the United States and completing Form I-9, which evidences that examination (*see* 8 USC § 1324a [b]). An employer that fails to verify an employee's eligibility is subject to civil and criminal penalties (*see* 8 USC § 1324a [a] [1] [B] [i]; [e], [f]). Furthermore, an employee who submits false or fraudulent documents in order to satisfy the verification requirements is subject to criminal prosecution (*see* 8 USC § 1324c [a]; 18 USC § 1546 [b]).

In *Hoffman Plastic Compounds, Inc. v NLRB* (535 US 137 [2002]), an undocumented alien who had induced an employer to hire him by submitting a false birth certificate indicating

that he was a United States citizen was awarded back pay by the National Labor Relations Board after being unlawfully fired for engaging in union activities. The United States Supreme Court reversed the award, reasoning that awarding back pay to a worker who had committed a criminal violation of the IRCA would trivialize the immigration laws, and would condone and encourage future violations.

In *Balbuena,* the New York Court of Appeals held, in two consolidated appeals, that an award of damages for lost wages to an undocumented alien who is injured on the job is not preempted by federal immigration policy, as expressed in the IRCA and construed in *Hoffman.* The Court reasoned that, while the federal Constitution grants Congress exclusive control over immigration and naturalization, the States have always had the power to legislate in areas of local concern, including the enactment of " 'laws affecting occupational health and safety' " (*Balbuena,* 6 NY3d at 358, quoting *De Canas v Bica,* 424 US 351, 356 [1976]). Indeed, the legislative history of the IRCA included a statement that the statute was "not intended 'to undermine or diminish in any way labor protections in existing law' " (*id.* at 359, quoting HR Rep No 99-682, part I, 99th Cong, 2d Sess, at 58, reprinted in 1986 US Code Cong & Admin News, at 5662), and nothing in the IRCA or in the *Hoffman* decision purports to limit a state court's power to award damages to an undocumented worker who is injured in the workplace. The Court of Appeals recognized that limiting the ability of such workers to recover damages would not only undermine the protections afforded by New York's Labor Law, but would fail to advance federal immigration policy and, in fact, would thwart that policy by minimizing employers' potential liability to undocumented aliens and thus providing an incentive for unscrupulous employers to hire them.

The *Balbuena* Court noted that in the two cases before it, there was no evidence that the plaintiffs violated the IRCA by submitting fraudulent documents to their employers at the time they were hired. The Court of Appeals found this to be a further basis for distinguishing *Hoffman*:

> "Aside from the compatibility of federal immigration law and our state Labor Law, plaintiffs here—unlike the alien in *Hoffman*—did not commit a criminal act under IRCA. Whereas the undocumented alien in *Hoffman* criminally provided his employer with fraudulent papers purporting to be proper

federal work documentation, there is no allegation in these cases that plaintiffs produced false work documents in violation of IRCA or were even asked by the employers to present the work authorization documents as required by IRCA. Notably, IRCA does not make it a crime to work without documentation. *Hoffman* is dependent on its facts, including the critical point that the alien tendered false documentation that allowed him to work legally in this country. This was a clear violation of IRCA. We see no reason to equate the criminal misconduct of the employee in *Hoffman* to the conduct of the plaintiffs here since, in the context of defendants' motions for partial summary judgment, we must presume that it was the employers who violated IRCA by failing to inquire into plaintiffs' immigration status or employment eligibility" (*Balbuena*, 6 NY3d at 360 [citation omitted]).

The Court further noted that, although it was not lawful for the plaintiffs to be employed in this country, this was not the type of illegality that would preclude them from recovering damages for their lost earnings as a matter of New York law, since the work they were performing was itself legal, and no statute makes it a crime to be employed without proper documentation. In addition, the Court observed that the plaintiffs' inability to mitigate damages did not preclude recovery, since both of them allegedly had sustained injuries that would preclude them from being employed at any time in the future and, in any event, the jury could take the plaintiffs' immigration status into account in determining the award of damages for lost wages, if any, to which the plaintiffs were entitled. Accordingly, the Court concluded that federal immigration policy did not bar awards of damages to the plaintiffs for lost wages.

Although the Court of Appeals emphasized that there was no evidence that the plaintiffs in the cases before it had submitted false documentation at the time they were hired, the Court had no occasion to specify what the consequences of such conduct would have been. At one point, the Court appeared to indicate that the submission of false documentation was but one factor to be considered in determining whether an award of damages for lost wages would be barred by federal immigration policy (*see Balbuena*, 6 NY3d at 360 [*"Aside from the compatibility of federal immigration law and our state Labor Law,* plaintiffs

here—unlike the alien in *Hoffman*—did not commit a criminal act under IRCA" (emphasis added)]).

Even assuming that the Court's language supports the defendants' present argument that the submission of a fraudulent document upon being hired is alone a sufficient basis for denying a plaintiff damages for lost wages, our reading of *Balbuena* leads us to conclude that this rule is limited to situations in which an innocent employer is duped by fraudulent documentation into believing that the employee is a United States citizen or otherwise eligible for employment, as was the employer in *Hoffman*, for example (*see Hoffman*, 535 US at 141; *id.* at 155 [Breyer, J., dissenting]). In this case, the evidence at trial showed that the plaintiff submitted a false Social Security card to City Wide at the time he was hired. It also appears, however, that City Wide violated the IRCA because it listed only the plaintiff's Social Security card on the Form I-9 it completed, when it was required (as explained on the form itself) to verify additional documentation. Although the *Balbuena* decision made clear that the plaintiffs' conduct could not be "equate[d] [to] the criminal misconduct of the employee in *Hoffman*" if "it was the employers who violated IRCA by failing to inquire into plaintiffs' immigration status or employment eligibility" (*Balbuena*, 6 NY3d at 360), the Court of Appeals was not called upon to determine whether an award of damages for lost wages would be preempted under the circumstances this Court faces now, where it appears that both the plaintiff and the employer violated the IRCA.

We do not believe that the *Balbuena* decision should be read so broadly as to stand for the proposition that a worker forfeits his or her right to recover lost earnings merely by virtue of submitting a false document at the time he or she is hired. Rather, the false document must actually induce the employer to offer employment to the plaintiff. At the conclusion of its decision, the Court of Appeals stated: "We therefore hold, on the records before us in these Labor Law §§ 200, 240 (1) and § 241 (6) cases, and in the absence of proof that plaintiffs tendered false work authorization documents *to obtain employment*, that IRCA does not bar maintenance of a claim for lost wages by an undocumented alien" (*Balbuena*, 6 NY3d at 363 [emphasis added]). Thus, the Court of Appeals did not hold that the mere submission of any false document would preclude a plaintiff from recovering damages for lost wages, but rather, that such damages would be unavailable if the plaintiff submitted such

documents *to obtain employment.* If the employer was, or should have been, aware of the plaintiff's immigration status, and nonetheless hired the plaintiff "with a wink and a nod" (*Hoffman,* 535 US at 156 [Breyer, J., dissenting]), the false document was not necessary "to obtain employment."

Similarly, in our decision on the prior appeal in this matter, we noted that "an undocumented alien *may* be precluded from recovering damages for lost wages if he or she *obtained employment by* submitting false documentation to the employer" (*Coque v Wildflower Estates Devs., Inc.,* 31 AD3d 484, 487 [2006], citing *Balbuena,* 6 NY3d at 362-363 [emphasis added]). Contrary to the defendants' contention, this statement does not support their position. If the employer hires the employee with knowledge of the employee's undocumented status, or without verifying the employee's eligibility for employment, the employer has not been induced by the false document to hire the employee and, thus, the employee has not "obtained employment by" submitting the false document.

Indeed, the *Balbuena* Court suggested that the plaintiff's right to recover damages for lost wages is affected by the employer's knowledge of (or willful blindness to) the plaintiff's undocumented status. The Court observed that: "Moreover, there is no evidence in the records before us that plaintiffs (like the alien worker in *Hoffman*) tendered false documentation in violation of IRCA *or that their employers satisfied their duty to verify plaintiffs' eligibility to work*" (*Balbuena,* 6 NY3d at 362 [emphasis added]; *see also id.* at 360 ["there is no allegation in these cases that plaintiffs produced false work documents in violation of IRCA *or were even asked by the employers to present the work authorization documents as required by IRCA*" (emphasis added)]). The Court cited with approval (*id.* at 359) a decision of the New Hampshire Supreme Court, which held that a responsible party may be held liable to an undocumented alien for lost wages if that party "knew or should have known of [the employee's] status, yet hired or continued to employ him nonetheless," and that the employee's submission of fraudulent documents does not bar recovery unless the employer "reasonably relied upon those documents" (*Rosa v Partners in Progress, Inc.,* 152 NH 6, 15, 868 A2d 994, 1002 [2005]).[1]

---

1. We recognize that in a case involving damages for an alleged violation of the Labor Law, it is not the employer who is penalized for violating the IRCA, since the defendants in such an action are usually the property owner and the

Barring recovery for lost earnings only where the plaintiff's submission of fraudulent documentation actually induced the employer to hire the plaintiff is consistent with the objectives of both federal immigration policy and New York's Labor Law. Clearly, an employer should not be rewarded for its failure to comply with federal immigration law by being relieved of liability for its failure to provide a safe workplace. Moreover, where an employer is complicit in an illegal hire, foreclosing the employee from recovering damages for lost wages does not discourage violations of federal immigration law, but has exactly the opposite effect, from the employer's perspective. Although, pursuant to our holding, an employee may be entitled to recover damages for lost wages despite his or her participation in an illegal hire, such a recovery is not a reward for wrongdoing, but merely constitutes the relief to which an injured worker is normally entitled, and thus represents the status quo. Indeed, there is no reason to believe that any undocumented alien has an incentive to submit fraudulent documents in order to obtain employment with the hope of someday receiving a large award of damages for lost wages as a result of a workplace accident. Moreover, while relieving defendants (including owners and general contractors) of liability for lost wages would constitute an unjustified windfall, an award of such damages does not constitute a windfall to the employee, since it is appropriate for a jury to take the plaintiff's immigration status into consideration in determining the amount of damages for lost wages, if any, to which the plaintiff is entitled (*see Balbuena,* 6 NY3d at 362).[2]

Thus, we conclude that where an employer violates the IRCA in hiring an employee, such as by failing to properly verify the employee's eligibility for work, the employee is not precluded, by virtue of his submission of a fraudulent document to the employer, from recovering damages for lost wages as a result of a workplace accident (*cf. Matter of Amoah v Mallah Mgt., LLC,* 57 AD3d 29 [3d Dept 2008] [un-

general contractor. (Indeed, an action against the employer is barred by Workers' Compensation Law § 11.) Yet, the same principles apply regardless of the identity of the defendant, since precluding recovery of damages for lost wages in Labor Law cases would provide a windfall to defendants and, more important, would reduce their incentive to comply with the requirements of the Labor Law and provide employees with a safe place to work (*see Balbuena v IDR Realty LLC,* 6 NY3d at 361 n 8).

**2.** In this case, for example, although the plaintiff was only 30 years old at the time of the accident, the award for future lost wages covered a period of only five years, and totaled only $60,000.

documented alien who submits false documentation to employer at time of hiring is not precluded from obtaining workers' compensation benefits, regardless of whether employer violated the IRCA in hiring employee]). Accordingly, the jury's award of damages for lost wages in this case should not be disturbed.

We now turn to the other issues raised on these appeals. Classic argues that the jury's verdict on the issue of liability was "invalidated" by this Court's decision on the prior appeal in this matter, which relieved Classic of liability under Labor Law § 240 (1) and found triable issues of fact as to whether Wildflower was negligent. Contrary to Classic's contentions, the jury was not informed that Classic had already been found liable, and Classic was permitted to present evidence that Wildflower was negligent. Nonetheless, because the trial occurred prior to this Court's determination, the parties did not fully litigate Wildflower's possible negligence. This Court's subsequent determination that Wildflower may have had notice of the shingles being stacked on the roof in dangerous proximity to the skylight opening and, thus, may have been actively negligent, does not affect the validity of the jury's finding that Classic was negligent, but it does mean that Wildflower may have shared responsibility for the accident with Classic. Accordingly, we modify the judgment as against Classic, and remit the matter for a new trial, not on the issue of Classic's liability, but only on the issues of Wildflower's liability and the apportionment of liability between Classic and Wildflower. Further, since there remains a factual issue as to Wildflower's possible negligence, we vacate the portion of the judgment which was against Classic on Wildflower's cross claims for common-law and contractual indemnification (see Priestly v Montefiore Med. Ctr./Einstein Med. Ctr., 10 AD3d 493 [2004]; Correia v Professional Data Mgt., 259 AD2d 60, 65 [1999]).

Contrary to Classic's further contention, the evidence supporting the jury's findings that both Classic and City Wide were negligent, but that only Classic's negligence was a proximate cause of the plaintiff's injuries, was legally sufficient and the verdict was not against the weight of the evidence (see Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978]; Nicastro v Park, 113 AD2d 129 [1985]).

In light of the foregoing determinations, the appeal from so much of the order entered January 10, 2007, as denied those branches of Classic's motion which were for a new trial on the issues of fault-based liability of Wildflower for the plaintiff's

injuries and the apportionment of fault between Wildflower and Classic, and to reject for entry certain proposed judgments, has been rendered academic.

The awards of damages for future medical expenses and past and future pain and suffering deviate materially from what would be reasonable compensation to the extent indicated (*see* CPLR 5501 [c]).

The remarks of the trial judge challenged by the plaintiff on appeal, though improper (*see Vazquez v Costco Cos., Inc.*, 17 AD3d 350 [2005]; *Habenicht v R.K.O. Theatres*, 23 AD2d 378 [1965]), were not sufficiently prejudicial or pervasive to deprive the plaintiff of a fair trial.

The plaintiff's remaining contentions either are unpreserved for appellate review, are without merit, or otherwise do not warrant a new trial on the issue of damages (*see* CPLR 2002).

Accordingly, we modify the judgment by (1) deleting the provisions thereof awarding the plaintiff damages as against Classic and awarding Wildflower judgment against Classic on its cross claims for common-law and contractual indemnification, and (2) deleting the provisions thereof awarding the plaintiff damages for future medical expenses and past and future pain and suffering. As so modified, we affirm the judgment insofar as appealed and cross-appealed from, and remit the matter to the Supreme Court, Queens County, for a new trial on (1) the issues of Wildflower's fault-based liability for the plaintiff's injuries and the apportionment of fault between Wildflower and Classic, and (2) the issue of damages for future medical expenses and past and future pain and suffering only, unless within 30 days after service upon the defendants of a copy of this decision and order, the defendants shall serve and file in the office of the Clerk of the Supreme Court, Queens County, a written stipulation consenting to increase the verdict as to damages for future medical expenses from the sum of $863,000 to the sum of $2,500,000, and for past pain and suffering from the sum of $500,000 to the sum of $800,000, and for future pain and suffering from the sum of $1,250,000 to the sum of $3,500,000, and to entry of an appropriate amended judgment accordingly. In the event that the defendants so stipulate, then the judgment, as so modified, increased, and amended, is affirmed insofar as appealed and cross-appealed from, and the matter is remitted to the Supreme Court, Queens County, for a new trial on the issues of Wildflower's fault-based liability for the plaintiff's injuries and the apportionment of fault between Wildflower and

Classic only. We dismiss, as academic, the appeal from so much of the order as denied those branches of Classic's motion which were for a new trial on the issues of Wildflower's fault-based liability for the plaintiff's injuries and the apportionment of fault between Wildflower and Classic, and to reject for entry certain proposed judgments, and we affirm the order insofar as reviewed.

RITTER, FLORIO and McCARTHY, JJ., concur.

Ordered that the judgment is modified, on the law, on the facts, and in the exercise of discretion, by (1) deleting the provisions thereof awarding the plaintiff damages as against Classic Construction and awarding Wildflower Estates Developers, Inc., judgment against Classic Construction on its cross claims for common-law and contractual indemnification, and (2) deleting the provisions thereof awarding the plaintiff damages for future medical expenses and past and future pain and suffering; as so modified, the judgment is affirmed insofar as appealed and cross-appealed from, and the matter is remitted to the Supreme Court, Queens County, for a new trial on (1) the issues of the fault-based liability of Wildflower Estates Developers, Inc., for the plaintiff's injuries and the apportionment of fault between Wildflower Estates Developers, Inc., and Classic Construction, and (2) the issue of damages for future medical expenses and past and future pain and suffering only, unless within 30 days after service upon the defendants of a copy of this decision and order, the defendants shall serve and file in the office of the Clerk of the Supreme Court, Queens County, a written stipulation consenting to increase the verdict as to damages for future medical expenses from the sum of $863,000 to the sum of $2,500,000, and for past pain and suffering from the sum of $500,000 to the sum of $800,000, and for future pain and suffering from the sum of $1,250,000 to the sum of $3,500,000, and to entry of an appropriate amended judgment accordingly; in the event that the defendants so stipulate, then the judgment, as so modified, increased, and amended, is affirmed insofar as appealed and cross-appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Queens County, for a new trial on the issues of the fault-based liability of Wildflower Estates Developers, Inc., for the plaintiff's injuries and the apportionment of fault between Wildflower Estates Developers, Inc., and Classic Construction only; and it is further,

Ordered that the appeal from so much of the order as denied those branches of the motion of Classic Construction which

were for a new trial on the issues of the fault-based liability of Wildflower Estates Developers, Inc., for the plaintiff's injuries and the apportionment of fault between Wildflower Estates Developers, Inc., and Classic Construction, and to reject for entry certain proposed judgments, is dismissed as academic; and it is further,

Ordered that the order is affirmed insofar as reviewed; and it is further,

Ordered that one bill of costs is awarded to the plaintiff, payable by Wildflower Estates Developers, Inc.