■ Jonas Macedo, Respondent, v J.D. Posillico, Inc., Appellant-Respondent, et al., Defendant. J.D. Posillico, Inc., Third-Party Plaintiff-Respondent, v Carabie Corp., Third-Party Defendant-Appellant. Jonas Macedo, Appellant, v J.D. Posillico, Inc., Respondent, et al., Defendant. J.D. Posillico, Inc., Third-Party Plaintiff-Respondent, v Carabie Corp., Third-Party Defendant-Respondent. [891 NYS2d 46]—

Plaintiff met his prima facie burden of establishing that he was performing work covered by section 240 (1). It is undisputed that he was working on an elevated platform, attempting to lift a cone hanging from a rope, when he and a coworker fell from the platform (see Landgraff v 1579 Bronx Riv. Ave., LLC, 18 AD3d 385 [2005]; Kyle v City of New York, 268 AD2d 192 [2000], lv denied 97 NY2d 608 [2002]). Whether or not the platform failed or bent prior to plaintiff's fall is irrelevant because there is no question that neither plaintiff's safety device nor the platform and associated safety wire prevented his fall and subsequent injury.

Even were we to consider that plaintiff's right to recover under section 240 (1) requires that plaintiff prove that the platform failed, we note that no witness rebuts plaintiff's

contention, supported by the testimony of his coworkers, that the platform bent or failed. Defendant Posillico merely offered testimony from persons who did not witness the accident that after the accident "no changes or repairs were made to the platform," and that the platform was "secure" after the accident. This simply does not refute the eyewitness testimony that the platform bent at the time of the accident.

The motion court properly refused to dismiss plaintiff's Labor Law § 241 (6) claim premised on Industrial Code (12 NYCRR) § 23-1.15. Indeed, section 23-5.1 (j) specifically requires safety railings for *all* scaffold platforms. Similarly, Industrial Code § 23-5.3 (e) requires safety railings for all metal scaffolds. While Industrial Code § 23-5.8, which covers suspended scaffolds, does not mention safety railings, there is no indication that the rules provided in section 23-5.1 and section 23-5.3 are not applicable to suspended scaffolds.

However, the motion court erred in refusing to dismiss plaintiff's Labor Law § 241 (6) claim premised on Industrial Code (12 NYCRR) § 23-1.15 (c). Indeed, section 23-1.15 (c) does not require the presence of a toe board when "such safety railing is installed at grade or ground level or is not adjacent to any opening, pit or other area which may be occupied by any person." Since there were no workers below the platform in this case, the claim based on section 23-1.15 (c) should have been dismissed.

The motion court properly refused to dismiss plaintiff's section 241 (6) claim premised on Industrial Code (12 NYCRR) § 23-1.16 (d), which requires that tail lines shall not be longer than four feet. Here, plaintiff testified that his line was approximately six feet long and that if he had not fallen that far he would not have experienced the jolt that caused his injury.

Finally, as this Court has previously held, the section 241 (6) claim premised on Industrial Code (12 NYCRR) § 23-5.1 (c) (1) must fail because the provision is insufficiently specific (*Greaves v Obayashi Corp.*, 55 AD3d 409, 410 [2008], *lv dismissed* 12 NY3d 794 [2009]).

The motion court properly granted Posillico summary judgment on its contractual indemnification claim. It was undisputed that Carabie directed and controlled plaintiff's work as well as the construction and installation of the platform. Further, the Labor Law § 200 and commom-law negligence claims against Posillico were dismissed. Thus, while Carabie's negligence has not yet been proven, Posillico's liability, if any, would only be vicarious and statutory. Accordingly, Posillico is entitled to enforce the indemnification provision in its agreement with

Carabie (*see Colozzo v National Ctr. Found., Inc.*, 30 AD3d 251 [2006]; *Aarons v 401 Hotel, L.P.*, 12 AD3d 293 [2004]).

Plaintiff did not forfeit his right to recover lost wages since the evidence did not show that Carabie was induced to hire him because he produced false documentation (*see Balbuena v IDR Realty LLC*, 6 NY3d 338, 362-363 [2006]; *Coque v Wildflower Estates Devs., Inc.*, 58 AD3d 44, 52 [2008]). While plaintiff admitted that he had a false social security number which he obtained in 1995, he maintained that at the time Carabie hired him, he only provided a driver's license, union card and tax ID card. Carabie's chief operating officer claimed that plaintiff provided a copy of his social security card at the time he was hired, which Carabie relied on as being accurate, and she provided a copy of plaintiff's social security card which Carabie apparently obtained at some point. However, it is undisputed that Carabie did not complete or have plaintiff sign an I-9 Form until months after the accident took place. Accordingly, even assuming that plaintiff had submitted his social security card at the time of his hire, it is clear that Carabie failed to comply with its employment verification obligations in good faith. Thus, it cannot be concluded that plaintiff induced Carabie to hire him based on his social security card.

We have considered the parties' remaining arguments and find them unavailing. Concur—Mazzarelli, J.P., Andrias, Saxe, Catterson and Acosta, JJ.