NEW YORK HOSPITAL MEDICAL CENTER OF QUEENS, Appellant, v MICROTECH CONTRACTING CORP., Respondent. [951 NYS2d 546]—

In an action for contribution and indemnification, the plaintiff appeals, as limited by its brief, from so much of an order of the Supreme Court, Suffolk County (Rebolini, J.), entered August 19, 2011, as granted that branch of the defendant's motion which was to dismiss the complaint pursuant to CPLR 3211 (a) (7).

Ordered that the order is affirmed insofar as appealed from, with costs.

The defendant allegedly employed two undocumented aliens (hereinafter the subject employees) to perform work on the plaintiff's property. The subject employees were injured on the job, and the defendant provided them with compensation for their injuries pursuant to the Workers' Compensation Law. The employees sued the plaintiff for damages relating to their injuries predicated upon violations of the Labor Law. The plaintiff commenced this separate action seeking contribution and indemnification from the defendant. The defendant, inter alia, moved to dismiss the complaint pursuant to CPLR 3211 (a) (7) on the ground that the plaintiff's claims for contribution and indemnification were barred by Workers' Compensation Law § 11. The Supreme Court granted that branch of the motion which was to dismiss the complaint pursuant to CPLR 3211 (a) (7). The plaintiff appeals. We affirm the order insofar as appealed from.

New York's Workers' Compensation Law was enacted in 1914 "for socioeconomic remediation purposes 'as a means of protect-

ing work[ers] and their dependents from want in case of injury' on the job" (*Matter of Johannesen v New York City Dept. of Hous. Preserv. & Dev.*, 84 NY2d 129, 134 [1994], quoting *Matter of Post v Burger & Gohlke*, 216 NY 544, 553 [1916]; *see Matter of Richardson v Fiedler Roofing*, 67 NY2d 246, 250-251 [1986]). "It was the intention of the legislature to secure such injured workmen and their dependents from becoming objects of charity, and to make reasonable compensation for injuries sustained or death incurred by reason of such employment a part of the expense of the lines of business included within the definition of hazardous employments as stated in the act" (*Matter of Post v Burger & Gohlke*, 216 NY at 553). The Workers' Compensation Law thus requires employers to " 'pay or provide compensation [to employees] for their disability or death from injury arising out of and in the course of the employment without regard to fault as a cause of the injury' " (*Madeira v Affordable Hous. Found., Inc.*, 469 F3d 219, 229 [2006], quoting Workers' Compensation Law § 10 [1]).

With very limited exceptions, the Workers' Compensation Law is intended to be the employer's exclusive liability to its employees (*see* Minkowitz, Practice Commentaries, McKinney's Cons Laws of NY, Book 64, Workers' Compensation Law § 11 at 444; *see also Fleming v Graham*, 10 NY3d 296, 299-300 [2008]). "An employer may be held liable for contribution or indemnification only if the employee has sustained a grave injury as defined by the Workers' Compensation Law or when there is a 'written contract entered into prior to the accident or occurrence by which the employer had expressly agreed to contribution or indemnification of the claimant' " (*Persaud v Bovis Lend Lease, Inc.*, 93 AD3d 831, 832 [2012], quoting Workers' Compensation Law § 11). The statute thus continues to reflect the original " 'basis of the bargain between business and labor—that workers obtain necessary medical care benefits and compensation for workplace injuries regardless of fault while employers obtain a degree of economic protection from devastating lawsuits' " (*Castro v United Container Mach. Group*, 96 NY2d 398, 401-402 [2001], quoting Governor's Mem approving L 1996, ch 635, 1996 NY Legis Ann at 460; *see Fleming v Graham*, 10 NY3d at 299-300; *Boles v Dormer Giant, Inc.*, 4 NY3d 235, 240 [2005]).

Here, the complaint seeks contribution and indemnification from the defendant. The complaint alleges that the subject employees were employed by the defendant and were injured during the course of their employment while working on premises owned by the plaintiff. The complaint does not allege that the

subject employees sustained grave injuries, or that the defendant expressly agreed to contribution or indemnification in a written contract.

In opposing that branch of the defendant's motion which was to dismiss the complaint pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, the plaintiff did not allege that it was entitled to contribution or indemnification pursuant to a written contract, or that the subject employees suffered a grave injury. Rather, the plaintiff asserted that the defendant failed to verify the immigration status of the subject employees and that this failure constituted a violation of the Immigration Reform and Control Act of 1986 (8 USC § 1324a; hereinafter the IRCA). The plaintiff contended that this violation should result in the loss of protections provided to employers under the Workers' Compensation Law and that the subject branch of the defendant's motion should therefore have been denied.

Congress adopted the IRCA as a means of eliminating job opportunities for undocumented aliens in an attempt to curtail illegal immigration (*see Madeira v Affordable Hous. Found., Inc.*, 469 F3d at 231; *Balbuena v IDR Realty LLC*, 6 NY3d 338, 353 [2006]). "To attain this goal, the most important component of the IRCA scheme was the creation of a new '[e]mployment verification system' designed to deter the employment of aliens who are not lawfully present in the United States and those who are lawfully present, but not authorized to work" (*Balbuena v IDR Realty LLC*, 6 NY3d at 353, quoting 8 USC § 1324a [b]; *see Madeira v Affordable Hous. Found., Inc.*, 469 F3d at 231). Before hiring an alien, the IRCA requires an employer "to verify the prospective worker's identity and work eligibility by examining the government-issued documentation. If the required documentation is not presented, the alien cannot be hired" (*Balbuena v IDR Realty LLC*, 6 NY3d at 353, citing 8 USC § 1324a [a] [1]; *see Madeira v Affordable Hous. Found., Inc.*, 469 F3d at 231; *Coque v Wildflower Estates Devs., Inc.*, 58 AD3d 44, 49 [2008]). "An employer who knowingly violates the employment verification requirements, or who unknowingly hires an illegal alien but subsequently learns that an alien is not authorized to work and does not immediately terminate the employment relationship, is subject to civil or criminal prosecution and penalties" (*Balbuena v IDR Realty LLC*, 6 NY3d at 353-354, citing 8 USC § 1324a [a] [1], [2]; [f] [1]; *see Madeira v Affordable Hous. Found., Inc.*, 469 F3d at 231; *Coque v Wildflower Estates Devs., Inc.*, 58 AD3d 44, 49 [2008]).

"In order to preserve the national uniformity of this verification system and the sanctions imposed for violations, Congress

expressly provided that IRCA would 'preempt any State or local law imposing civil or criminal sanctions (other than through licensing and similar laws) upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens' " (*Balbuena v IDR Realty LLC*, 6 NY3d at 354, quoting 8 USC § 1324a [h] [2]; *see Madeira v Affordable Hous. Found., Inc.*, 469 F3d at 231-232). "The statute is silent, however, as to its preemptive effect on any other state or local laws" (*Madeira v Affordable Hous. Found., Inc.*, 469 F3d at 232).

The Supremacy Clause of the United States Constitution provides authority for federal preemption of state law (*see* US Const, art VI, cl 2; *see also Madeira v Affordable Hous. Found., Inc.*, 469 F3d at 237-238; *Balbuena v IDR Realty LLC*, 6 NY3d at 356). However, "courts do not readily assume preemption" (*Madeira v Affordable Hous. Found., Inc.*, 469 F3d at 238), and "[t]he presumption against preemption is especially strong with regard to laws that affect the states' historic police powers over occupational health and safety issues" (*Balbuena v IDR Realty LLC*, 6 NY3d at 356; *see Coque v Wildflower Estates Devs., Inc.*, 58 AD3d at 50). The presumption is only overcome if Congress demonstrates a "clear and manifest intent to preempt the exercise of state police power" (*Madeira v Affordable Hous. Found., Inc.*, 469 F3d at 238; *see Balbuena v IDR Realty LLC*, 6 NY3d at 356).

States enjoy an historic right to regulate employment relationships "to protect workers within the State" pursuant to the broad authority of their police powers (*De Canas v Bica*, 424 US 351, 356 [1976]; *see Balbuena v IDR Realty LLC*, 6 NY3d at 358). This includes the power to enact "laws affecting occupational health and safety, and workmen's compensation laws" (*De Canas v Bica*, 424 US at 356; *see Balbuena v IDR Realty LLC*, 6 NY3d at 358). "Pursuant to this power, New York, like many states, has enacted various laws to compensate workers who sustain workplace injuries" (*Madeira v Affordable Hous. Found., Inc.*, 469 F3d at 228-229), including, as relevant here, the Workers' Compensation Law.

The IRCA does not contain an explicit statement that Congress intended to preempt state laws such as New York's Workers' Compensation Law (*id.* at 232, 239-240; *Balbuena v IDR Realty LLC*, 6 NY3d at 357). "To the contrary, the legislative history of IRCA shows that the Act was not intended 'to undermine or diminish in any way labor protections in existing law' " (*Balbuena v IDR Realty LLC*, 6 NY3d at 357, quoting HR Rep 99-682, part I, 99th Cong, 2d Sess at 58, reprinted in 1986 US Code Cong & Admin News at 5662). Moreover, nothing in

the relevant provisions of the Workers' Compensation Law seeks to impose "civil or criminal sanctions . . . upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens" (8 USC § 1324a [h] [2]; *see Balbuena v IDR Realty LLC*, 6 NY3d at 354; *see also Madeira v Affordable Hous. Found., Inc.*, 469 F3d at 231-232).

While precluding the defendant from receiving the protections provided by Workers' Compensation Law § 11 for its violations of the IRCA may support the ultimate goals of the IRCA by punishing the defendant for failing to verify the subject workers' immigration status (*see Madeira v Affordable Hous. Found., Inc.*, 469 F3d at 231; *Balbuena v IDR Realty LLC*, 6 NY3d at 353), affording the defendant the economic protections of Workers' Compensation Law § 11 even in light of a violation of the IRCA would not stand " 'as an obstacle to the accomplishment or execution of the full purposes and objectives of Congress' " such that Workers' Compensation Law § 11 should be considered preempted (*Madeira v Affordable Hous. Found., Inc.*, 469 F3d at 238, quoting *Hines v Davidowitz*, 312 US 52, 67 [1941]).

Furthermore, to accept the plaintiff's contention would not only effectively deny the defendant the economic protections it acquired under the Workers' Compensation Law in return for providing the subject employees with compensation for their injuries, but it would relieve the plaintiff of its responsibility to ensure a safe construction site for workers under the Labor Law (*see Balbuena v IDR Realty LLC*, 6 NY3d at 361 n 8). Such results would not be consistent with the legislative intent behind these statutes, which are designed to strike a balance between the needs of business and the importance of the welfare of workers (*see Castro v United Container Mach. Group*, 96 NY2d at 401-402; *see also Balbuena v IDR Realty LLC*, 6 NY3d at 357). While depriving the defendant of the protections of the Workers' Compensation Law may ultimately further the policies behind the IRCA, where, as here, no federal preemption exists, the proper course of action is not to create such a rule through a judicial determination, but, rather, to allow the New York Legislature to enact an appropriate rule based upon its policy preferences with respect to the welfare of state workers (*see Morales v County of Nassau*, 94 NY2d 218, 224-225 [1999]).

Although prior cases have addressed the right of an undocumented alien to recover lost wages or collect Workers' Compensation benefits for personal injuries sustained on the job, finding that such claims were not precluded by the IRCA (*see Matter of Ramroop v Flexo-Craft Print., Inc.*, 11 NY3d 160, 168 [2008]; *Balbuena v IDR Realty LLC*, 6 NY3d at 353; *Coque v Wildflower*

*Estates Devs., Inc.*, 58 AD3d at 49; *Matter of Amoah v Mallah Mgt., LLC*, 57 AD3d 29 [2008]; *see also Madeira v Affordable Hous. Found., Inc.*, 469 F3d at 231), there have been no cases addressing the right of an employer in violation of the IRCA to have immunity from third-party claims for contribution and indemnification under Workers' Compensation Law § 11. We conclude that the IRCA does not preempt the applicable provisions of the Workers' Compensation Law and that the violations of the IRCA alleged here do not abrogate the protections provided to the defendant by Workers' Compensation Law § 11 from third-party claims for contribution and indemnification

On a motion to dismiss the complaint pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, the court must afford the pleading a liberal construction, accept all facts as alleged in the pleading to be true, accord the plaintiff the benefit of every possible inference, and determine only whether the facts as alleged fit within any cognizable legal theory (*see Leon v Martinez*, 84 NY2d 83, 87 [1994]; *Breytman v Olinville Realty, LLC*, 54 AD3d 703 [2008]). Here, the complaint fails to allege a legally cognizable exception to the provisions of Workers' Compensation Law § 11, which otherwise serve to bar the cause of action for contribution and indemnification asserted here. Since the allegations contained in the complaint fail to state a cause of action, the Supreme Court properly granted that branch of the defendant's motion which was to dismiss the complaint pursuant to CPLR 3211 (a) (7). Skelos, J.P., Balkin, Lott and Miller, JJ., concur.