[937 NE2d 524, 910 NYS2d 767]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DON-ALD McKINNON, Appellant.

Argued September 16, 2010; decided October 14, 2010

**POINTS OF COUNSEL**

*Hogan Lovells US LLP,* New York City (*Nathaniel S. Boyer* of counsel), and *Benjamin N. Cardozo School of Law, Criminal Appeals Clinic* (*Stanley Neustadter* and *Jeremy Gutman* of counsel), for appellant. I. The evidence of "serious and permanent disfigurement" was insufficient to sustain a conviction for first degree assault. (*People v McLaughlin,* 8 AD3d 146; *People v Schulz,* 4 NY3d 521; *Jackson v Virginia,* 443 US 307; *People v Calabria,* 3 NY3d 80; *People v Jackson,* 65 NY2d 265; *People v Bailey,* 13 NY3d 67; *People v Danielson,* 9 NY3d 342; *People v Damiano,* 87 NY2d 477; *People v Carroll,* 95 NY2d 375; *People v Wong,* 81 NY2d 600.) II. The evidence of "specific intent to achieve the mayhem result" was insufficient to sustain a conviction for first degree assault. (*People v McLaughlin,* 8 AD3d 146; *People v Tran,* 188 Misc 2d 717, 308 AD2d 497; *People v Truesdale,* 186 AD2d 496; *Sandstrom v Montana,* 442 US 510; *People v Steinberg,* 79 NY2d 673; *Matter of Sean T.,* 224 AD2d 341; *People v Cornish,* 211 AD2d 639; *People v Danielson,* 9 NY3d 342; *People v Damiano,* 87 NY2d 477.) III.

Imposition of consecutive sentences was unauthorized because the commission of attempted kidnapping was a "material element" of felony assault. (*People v Day,* 73 NY2d 208; *People v Laverpool,* 267 AD2d 93; *People v Ahedo,* 229 AD2d 588; *People v Medina,* 152 AD2d 602; *People v Smiley,* 121 AD2d 274.)

*Robert T. Johnson, District Attorney,* Bronx (*Jason S. Whitehead, Joseph N. Ferdenzi* and *Nancy J. Killian* of counsel), for respondent. I. Defendant's challenge to the legal sufficiency of the evidence is unpreserved and, in any event, meritless. (*People v Gray,* 86 NY2d 10; *People v Lane,* 7 NY3d 888; *People v Hines,* 97 NY2d 56; *People v Carncross,* 14 NY3d 319; *People v Tarsia,* 50 NY2d 1; *People v Padro,* 75 NY2d 820; *People v Iannelli,* 69 NY2d 684; *People v Mateo,* 2 NY3d 383; *People v Bleakley,* 69 NY2d 490; *People v Marin,* 65 NY2d 741.) II. If this Court finds that the evidence was legally insufficient to sustain defendant's conviction for assault in the first degree, this Court cannot reduce defendant's first degree assault conviction to second degree felony assault since it is not a lesser included offense of first degree assault. The proper remedy would be to remand the case for a new trial on the remaining assault counts in the indictment since those counts were never considered by the jury in its deliberations. (*People v Glover,* 57 NY2d 61; *People v Van Norstrand,* 85 NY2d 131; *People v Scarborough,* 49 NY2d 364; *People v Martin,* 59 NY2d 704; *People v Green,* 56 NY2d 427; *People v Charles,* 78 NY2d 1044; *People v Green,* 96 NY2d 195; *People v Salcedo,* 92 NY2d 1019; *People v Ramirez,* 89 NY2d 444; *People v Laureano,* 87 NY2d 640.)

### OPINION OF THE COURT

SMITH, J.

We hold that the evidence was insufficient to support defendant's conviction for first degree assault, because it did not show that the victim of the assault was "seriously" disfigured.

## I

The victim was an inspector for the New York City Department of Health and Mental Hygiene. On the day in question, she went to inspect a summer camp at a Bronx storefront church. When she arrived, the camp was not yet open, but defendant, who lived in the building, let her in and began to chat with her. A few minutes later, defendant put an arm around the victim's neck and choked her. She lost consciousness briefly. When she revived, defendant again choked her with one arm,

while holding a knife in his other hand; he tried to drag her into a hallway. Defendant put the knife down on a stool, and the victim grabbed it and began to stab him over her shoulder. Defendant responded by biting the victim twice on the inner forearm, leaving marks that we describe in detail below. The victim escaped into the street, and defendant ran away, taking the victim's cell phone with him. He was arrested later that day.

Defendant was charged with various crimes in a 12-count indictment. Our main concern is count 5, charging first degree assault in that defendant "[w]ith intent to disfigure another person seriously and permanently . . . caused such injury" (*see* Penal Law § 120.10 [2]). Defendant was also indicted on two counts of second degree assault, alleging that he caused physical injury "[i]n the course of and in furtherance of the commission or attempted commission of a felony . . . or immediate flight therefrom" (count 7; *see* Penal Law § 120.05 [6]) and that he intentionally caused "serious physical injury" (count 10; *see* Penal Law § 120.05 [1]). All three assault counts, and a lesser included charge, were submitted to the jury, but the jury was instructed not to consider the lower-level assault charges if it convicted defendant of first degree assault.

Defendant was convicted of attempted kidnapping, criminal possession of stolen property and assault in the first degree. The Appellate Division affirmed (63 AD3d 426 [2009]), and a Judge of this Court granted leave to appeal (13 NY3d 747 [2009]). Defendant challenges only his first degree assault conviction in this Court, and we now reverse the Appellate Division's order insofar as it is appealed from.

## II

Under Penal Law § 120.10 (2), a person is guilty of assault in the first degree when: "With intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person."

The decisive issue in this case is whether the evidence was sufficient to support a finding, beyond reasonable doubt, that the victim was disfigured "seriously." We do not reach the question of whether she was disfigured "permanently," or whether defendant intended serious and permanent disfigurement.

Neither "disfigure" nor "disfigure seriously" is defined in the Penal Law, and we have never addressed the meaning of those

terms as they are used in that statute. But in *Fleming v Graham* (10 NY3d 296 [2008]), we considered the meaning of "severe facial disfigurement" as used in Workers' Compensation Law § 11. There, we approved the following definition of "disfigurement": "that which impairs or injures the beauty, symmetry or appearance of a person or thing; that which renders unsightly, misshapen or imperfect or deforms in some manner" (*id.* at 301, quoting *Pilato v Nigel Enters., Inc.*, 48 AD3d 1133, 1135-1136 [4th Dept 2008]). In explaining when a disfigurement is "severe," we acknowledged that "no conceivable standard" could perfectly identify all cases, but said: "A disfigurement is severe if a reasonable person viewing the plaintiff's face in its altered state would regard the condition as abhorrently distressing, highly objectionable, shocking or extremely unsightly" (*id.*).

*Fleming*'s definition of "disfigurement" seems no less apt in the context of the Penal Law: a person is disfigured when her natural beauty, symmetry or appearance is detrimentally altered—i.e., when she is rendered less attractive. To say when she is "seriously" disfigured is more difficult. An injury can be "serious" without being "severe," and thus a serious disfigurement need not meet the stringent *Fleming* test—it need not be "abhorrently distressing, highly objectionable, shocking or extremely unsightly" to a reasonable person. But "to disfigure . . . seriously" must be to inflict some harm substantially greater than the minimum required for "disfigurement." Apart from disfigurement, the conduct that warrants a first degree assault conviction under section 120.10 (2) is "to destroy, amputate or disable permanently a member or organ of [the] body." It is fair to infer that the words "to disfigure . . . seriously and permanently" were intended to describe an injury of comparable importance.

We conclude that serious disfigurement may be defined with a less strongly-worded version of *Fleming*'s definition of "severe" disfigurement. A person is "seriously" disfigured when a reasonable observer would find her altered appearance distressing or objectionable. The standard is an objective one, but we do not imply that the only relevant factor is the nature of the injury; the injury must be viewed in context, considering its location on the body and any relevant aspects of the victim's overall physical appearance. To apply the standard to this case, we examine what the evidence shows about the marks that defendant created by biting the victim's inner forearm.

The record contains a picture of the bite marks, taken on the day of the crime. It shows two ovals with reddish discoloration,

one located at and above the midpoint between the wrist and the elbow, the other closer to, but still several inches above, the wrist. According to hospital records, one bite mark measured 3.5 by 3 centimeters, the other 3 by 3 centimeters. Police officers who saw the victim's injuries on the day she suffered them described them as "severe" and "deep." Hospital records show that the victim's flesh was torn but that there was no "exudation" (oozing of fluid from blood vessels). The wounds did not require any stitches. The victim was told to follow up with a plastic surgeon for "optimal" cosmetic results, but there is no evidence that she did so.

There is no later photograph of the wounds, and the record as to what they looked like after they had time to heal is not precise. The victim displayed her arm to the jury at trial, but there is no contemporaneous description of what the jury saw. Later in the trial, both counsel described the wounds briefly: the prosecutor referred to "two large brown bite wounds," the defense lawyer to "scars, little black and blues right now."

This limited record is not sufficient to support a finding of serious disfigurement. It shows no more than that the victim had two scars of moderate size on her inner forearm. This is certainly a disfigurement, but no basis appears in the record for finding it a serious one, as we have defined the term. The mere existence of such scars, considering their location, would not make the victim's appearance distressing or objectionable to a reasonable person observing her. The case might be different if there were something unusually disturbing about the scars, but if there was the prosecution failed to make a record of it, in the form of either a photograph or a detailed description. We decline the prosecution's invitation to infer, in effect, that whatever the jury saw must have supported its verdict; a court reviewing the sufficiency of the evidence cannot rely on facts of which no record is made. A contemporaneous photograph or description is not necessary in every case where a victim's wound is shown to a jury—but it is necessary where, as here, there is no other evidence in the record supporting an inference that what the jury saw amounted to serious disfigurement.

We do not minimize the injury done to the victim by defendant's vicious assault. Perhaps no disfigurement is ever trivial; certainly this victim's is not. And no doubt more important is the way in which her wounds were inflicted—in a horrifying experience that might well leave serious and permanent emotional scars. Scars of that kind, however, cannot support a conviction

for first degree assault as the statute is written, and we must therefore reverse defendant's conviction of that crime and order count 5 of the indictment dismissed.

■ Count 10, alleging second degree assault based on "serious physical injury," must also be dismissed, because without a "serious . . . disfigurement" there is no evidence in this record of "serious physical injury" as the Penal Law defines it (see Penal Law § 10.00 [10]). Defendant may be retried, however, on count 7, alleging that he committed second degree assault by causing physical injury in the course of and in furtherance of a felony or immediate flight therefrom.

Accordingly, the order of the Appellate Division, to the extent appealed from, should be reversed and the case remitted to Supreme Court for further proceedings consistent with this opinion.

PIGOTT, J. (dissenting). I respectfully dissent and would affirm the order of the Appellate Division. The majority states that it will not infer "that whatever the jury saw must have supported its verdict" because when conducting a review of the sufficiency of the evidence, this Court "cannot rely on facts of which no record is made" (majority op at 316). But that only underscores the critical flaw in the majority's holding, namely, that it is the burden of defendant—the objecting party—and not the People, to develop an adequate record for appellate review (see People v Johnson, 205 AD2d 309 [1st Dept 1994], lv denied 84 NY2d 827 [1994], citing People v Olivo, 52 NY2d 309, 320 [1981]).

Here, defense counsel failed to make an adequate record, as was his burden, that the People's evidence as to the count of assault in the first degree was legally insufficient. He could have easily demanded that a contemporaneous description of the victim's arm be placed on the record, or asked that a photograph depicting the victim's arm on the day of the trial be admitted in evidence. He did neither. The record reflects that the jury was shown color photographs of the victim's arm, which were taken on the day of the attack, and that the victim displayed her arm to the jury at trial 20 months later. This, in my view, was sufficient to support the jury's factual determination that the scars fell within the parameters of the assault in the first degree statute under which defendant was convicted as well as the court's ruling that the evidence was sufficient to sustain that charge (see People v Coon, 34 AD3d 869, 870-871 [3d Dept 2006],

*lv denied* 10 NY3d 763 [2008] [rejecting defendant's claim of insufficiency of proof of element of serious physical injury, deferring to County Court's assessment because it heard the testimony concerning the cuts and also had the opportunity to observe the resultant scars]; *People v Irwin,* 5 AD3d 1122, 1123 [4th Dept 2004], *lv denied* 3 NY3d 642 [2004] [victim's wounds required surgery and, although she did not testify, photographs depicting her sutured wounds to the arm and hand were admitted in evidence and jury could have reasonably inferred that the wounds resulted in permanent scars]). The majority's conclusion, in my view, is nothing more than a factual determination disguised as a sufficiency argument that this Court lacks the authority to make.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ and JONES concur with Judge SMITH; Judge PIGOTT dissents and votes to affirm in a separate opinion.

Order, insofar as appealed from, reversed and case remitted to Supreme Court, Bronx County, for further proceedings in accordance with the opinion herein.