■ The People of the State of New York, Respondent, v Akieme Nesbitt, Appellant. [931 NYS2d 612]—

Defendant and the victim, his roommate, became involved in an argument. According to witness testimony, after the victim removed himself from the apartment, defendant stated, "I'm going to show these little N—— how we do it . . . I'm from Brooklyn" and repeatedly asked where his "blade" was. Defendant then approached the victim from behind in the hallway and placed him in a chokehold. He then proceeded to cut the victim's neck, back, arm and face with a device that consisted of three scalpels attached to a single handle. The victim ran back into the apartment and locked the door, which defendant unsuccessfully attempted to open.

Various witnesses testified that the victim's head was "squirting" with blood, and witnesses agreed that he was "cut bad." The victim's cuts were sutured an hour later at the hospital. He testified that for about two weeks after the incident, he had a headache and his face remained swollen. He also testified that a five-inch area of his arm was frequently numb. According to the testimony of a doctor from the Medical Examiner's Office, most of the victim's wounds were "superficial." However, he also testified that hospital records described the wounds to the victim's forehead and arm as "deep." Moreover, according to the doctor, the cut to the victim's neck was one inch away from the carotid artery. The doctor explained that had the artery been cut, the injury could have been life-threatening. He also indicated that the injury to the victim's right forearm was deep enough to have cut a tendon and could have caused permanent

nerve damage. As a result of the attack, a visible scar was left on the victim's head, extending from his right forehead and temple across his right ear about six inches. Other wounds on the victim's arms, back, head and neck resulted in keloid scars, which are visibly raised above the surrounding skin.

Defendant was indicted on a single count of attempted murder and two counts of assault in the first degree. The first count of assault charged defendant under Penal Law § 120.10 (1), which requires that "[w]ith intent to cause serious physical injury to another person, [the defendant] causes such injury . . . by means of a deadly weapon." The second count charged defendant under Penal Law § 120.10 (2), which requires intent to cause serious and permanent disfigurement of the victim, or intent to destroy, amputate or permanently disable a member or organ of the victim's body. After initially being found unfit to stand trial, defendant was found to be competent. However, defendant displayed extremely hostile and intransigent behavior throughout the proceedings.

Defense counsel, outside the presence of the jury, stated to the court that defendant was not cooperative, showed no interest in a plea offer, spit repeatedly in defense counsel's face and threatened to kill him. Nonetheless, counsel stated that he believed he could "fully represent [defendant] without any problem whatsoever." He further stated that the evidence of assault in the first degree was overwhelming and that the only defense that he could foresee was that defendant did not commit attempted murder. He noted that the first-degree assault charge was a B felony that was the same as attempted murder and that he could think of no defense for the former charge. He also acknowledged that, on appeal, the issue of ineffective assistance of counsel might be brought up. However, he asserted that the overwhelming evidence against his client did not provide him an opportunity to provide for a defense on the first-degree assault charges or give an opening statement. In response to a question from the court on whether defense counsel would request any lesser-included offenses, counsel stated that he did not "have any lesser included in mind at this point, other than maybe an assault, third degree charge." Later counsel confirmed that he had "no requests for lesser includeds."

During the defense summation, counsel explained to the jury that the attempted murder and assault charges each had "different things that the People must prove" and he would leave it to the jury to decide whether or not the elements of the first-degree assault were met. "That's up to you," he stated. However, defense counsel asked that on the charge of attempted

murder, the jury "check off the box that says 'Not Guilty,' " since there was "just not enough" to find for that particular charge. He told the jury to "make the right decision as to the other charges" but "not guilty to attempted murder." The jury was unable to reach a verdict on the attempted murder charge, but convicted defendant of the assault charges.

Defendant does not challenge the sufficiency of the evidence supporting his conviction. Rather, he argues that, during his summation, trial counsel essentially conceded guilt on the assault charges, rendering his assistance fatally ineffective. Defendant contends that this claim need not be made in the context of a motion to vacate the conviction pursuant to Criminal Procedure Law § 440.10, because the record on appeal presents a complete explanation for counsel's trial tactics, that is, he believed the assault charges to be indefensible. Defendant argues that contrary to trial counsel's position, there was a strong basis to argue to the jury that the victim did not sustain an injury that rose to the level required for first-degree assault. The People, on the other hand, argue that no interpretation of the evidence could have permitted a rational jury to acquit defendant of assault in the first degree.

A defendant asserting a claim of ineffective assistance must demonstrate that his attorney failed to provide "meaningful representation" (*People v Benevento*, 91 NY2d 708, 712 [1998]). The right to effective assistance of counsel "does not guarantee a perfect trial," and the defendant bringing such a claim bears a "high burden of showing that he was deprived of a fair trial and meaningful representation" (*People v Flores*, 84 NY2d 184, 187, 189 [1994]). While a "showing of prejudice [is] a significant" factor in determining whether meaningful representation was provided, it is not essential (*People v Stultz*, 2 NY3d 277, 284 [2004]). Rather, the "focus is on the fairness of the proceedings as a whole" (*id.*). However, where defense counsel completely abandons a viable line of argument that probably would have resulted in a different outcome, the representation may be found to have been ineffective as a matter of law (*People v Daley*, 172 AD2d 619, 621 [1991]). On the other hand, where defense counsel has "limited options for advancing a viable defense," the strategy which counsel does employ will rarely result in a determination that counsel was ineffective (*People v Green*, 187 AD2d 259, 259 [1992], *lv denied* 81 NY2d 762 [1992]). After all, " '[c]ounsel may not be expected to create a defense when it does not exist' " (*People v Day*, 51 AD3d 584, 585 [2008], *lv denied* 11 NY3d 831 [2008], quoting *People v DeFreitas*, 213 AD2d 96, 101 [1995]).

As a preliminary matter, the record before us is sufficient, without the need for a CPL 440.10 motion, to determine whether counsel was effective (*see People v Monroe*, 6 AD3d 240 [2004], *lv denied* 3 NY3d 644 [2004]). To the extent that trial counsel did not argue vociferously for acquittal on the assault charges, he fully explained to the court that he did not believe there was a meritorious defense.

The first assault theory charged by the People was that defendant, with intent to cause serious physical injury to the victim, caused such injury to him by means of a deadly weapon or a dangerous instrument (Penal Law § 120.10 [1]). Serious physical injury is defined as "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ" (Penal Law § 10.00 [10]). "Serious" disfigurement, in turn, exists "when a reasonable observer would find [a person's] altered appearance distressing or objectionable" (*People v McKinnon*, 15 NY3d 311, 315 [2010]). The standard is "an objective one," but the nature of the injury is not "the only relevant factor"; the injury "must be viewed in context, considering its location on the body and any relevant aspects of the victim's overall physical appearance" (*id.*).

There is no basis to argue that defendant did not intend to cause serious physical injury to complainant. His belligerent comments just before the attack, the nature of the weapon, the manner in which he struck the victim with it, including on his neck near the carotid artery, and the fact that he attempted to pursue the victim back into his apartment, indicate that defendant had the requisite intent. As for the serious physical injury element, it is questionable whether the evidence supported a theory that defendant placed the victim at substantial risk of death. However, there was strong evidence that the victim suffered a serious and protracted disfigurement as a result of multiple visible and permanent scars. One scar was six inches extending across his right forehead and temple and across his right ear (*see People v Martinez*, 257 AD2d 667 [1999], *lv denied* 93 NY2d 974 [1999]), and there were keloid scars on his back and the back of his head and neck (*see People v Mingo*, 1 AD3d 298 [2003], *lv denied* 2 NY3d 743 [2004]). In addition, the victim suffered protracted impairment of the function of a bodily organ in that, at the time of trial, he suffered loss of sensation in his right arm (*see People v Moreno*, 233 AD2d 531, 532 [1996], *lv denied* 89 NY2d 944 [1997]). This same evidence also strongly supported the conviction for first-degree assault pursuant to

Penal Law § 120.10 (2), as the victim was seriously or permanently disfigured.

While defense counsel might have made a colorable argument to the jury that the People did not meet the elements of first degree assault, the mere ability to make such an argument is not the standard on an ineffective assistance claim. As explained above, it is whether defendant was deprived of a fair trial. A significant factor to consider is whether defendant was actually prejudiced because a different result would have followed if counsel would have avoided the mistakes alleged on appeal (*see People v Caban*, 5 NY3d 143, 155-156 [2005]; *People v Crique*, 63 AD3d 566, 567 [2009], *lv denied* 13 NY3d 835 [2009]; *People v Sellers*, 59 AD3d 294 [2009], *lv denied* 12 NY3d 859 [2009]). Here, no prejudice has been shown. Based on the evidence, it is unlikely that, had counsel made the arguments advanced by defendant now, the outcome would have been different. The evidence of disfigurement and impairment suffered by the victim strongly supported defendant's conviction, and it is not probable that the jury would have found them only to meet the elements of a lesser included offense of assault in the second degree.

Of course, the lack of prejudice is not dispositive, since the proper analysis is not one of strict harmless error (*see People v Benevento*, 91 NY2d at 714); it entails whether counsel's actions deprived defendant of a fair trial. Nevertheless, defendant has not met that standard. Foremost, as explained above, the question of whether defendant would have prevailed had counsel acted differently is not a close one, so it cannot be said that defendant suffered a fundamental unfairness by counsel's decision not to argue more vociferously for an acquittal on the assault charges. Moreover, it cannot be ignored that counsel did mount a strong, and ultimately successful, argument, that defendant was not guilty of attempted murder. In doing so, he argued that the wounds the victim received were superficial, which could have given the jury a basis for finding defendant not guilty of the assault charges as well. Although counsel did not explicitly argue to the jury that they should find defendant not guilty on those charges, his comments were not a concession of guilt. Rather, it is apparent that counsel's strategy was to focus the jury on what he correctly believed was the winnable part of the People's case. This necessarily involved foregoing an argument on the much less defensible assault charges, which counsel would not have been unreasonable in believing would have eroded his credibility and resulted in conviction on all three counts. In light of the foregoing, counsel's tactics did not result

in defendant receiving a trial that was less than fair. Concur—Mazzarelli, J.P., Sweeny and Román, JJ.

Moskowitz and Renwick, JJ., dissent in a memorandum by Renwick, J., as follows: I must respectfully dissent. In my opinion, defendant received ineffective assistance of counsel when his attorney essentially conceded his guilt of first-degree assault, choosing only to litigate the charge of attempted murder, also a class B felony. While in some cases a partial concession of guilt may be a sound strategy, this was not such a case.

Ordinarily, a CPL 440.10 motion to vacate the judgment of conviction is needed to generate the fuller record needed to adequately assess a claim of ineffective assistance of counsel. In this case, however, defendant's trial counsel deliberately made a record of his view of the strength of the People's case and explained that he felt he had no defenses to the first-degree assault charges. Asked by the court if he wished to request a charge on a lesser included offense, counsel repeatedly stated that he could not think of an applicable one. Hence, the existing record is adequate for review of the ineffective assistance claim, as counsel chose to make his own record as to why he was virtually abandoning any defense to first-degree assault.

The People's evidence established that, after a heated argument, defendant pulled out a weapon consisting of three scalpels attached to one handle, rushed the victim, and slashed him on the neck from behind. Defendant then inflicted additional slash wounds to the victim's face, arm and back before the victim fled into his apartment. Defense counsel reasonably recognized, given this evidence, that defendant had no plausible defense to the charge that he committed at least some kind of assault.

The indictment charged defendant with attempted murder, of which he was found not guilty. It also charged first-degree assault under a theory of intentionally causing serious physical injury to the victim by means of a dangerous instrument, as well as under a theory of seriously and permanently disfiguring the victim, or destroying, amputating, or permanently disabling a member or organ of his body, with intent to cause such injury (see Penal Law § 120.10 [1], [2]).

"Serious physical injury" is an injury that creates "a substantial risk of death," "serious and protracted disfigurement," or which causes "protracted impairment of health or protracted loss or impairment of the function of any bodily organ" (Penal Law § 10.00 [10]). Certainly, the evidence here was legally sufficient to support the first-degree assault convictions. Nonetheless, even given the strength of the People's case, there was room for argument that defendant had not committed the crime of first-degree assault.

The People's medical expert did not testify that any of the victim's injuries created a "substantial risk of death." The expert did opine that one of the cuts to his neck *would have been* life-threatening *if* it had been an inch deeper and severed the carotid artery. The carotid artery was not severed, however, and none of the wounds was actually life-threatening. Whether a wound creates "serious disfigurement" is judged under an objective, "reasonable observer" standard, considering the nature of the wound, its location on the body, and the victim's overall physical appearance (*see People v McKinnon*, 15 NY3d 311, 315 [2010]). Here, photographs of the victim's injuries indicate that the slash wounds, although shocking in appearance immediately after the attack, appeared to have healed well. Counsel could have made a reasonable argument that the victim's scars have not left his appearance so "distressing or objectionable" as to constitute "severe disfigurement" (*McKinnon*, 15 NY3d at 315).

In addition, "serious physical injury" may exist where the victim suffers "protracted impairment of health or protracted loss or impairment of the function of any bodily organ." Here, the only injury that might have met this standard is one of the wounds to the victim's forearm, which cut a tendon. The medical expert testified that such an injury could have resulted in nerve damage, and the victim testified that a small section of his arm was sometimes numb. The numbness appears to have been intermittent, however, and, in any event, the victim did not testify that he could not use the arm when it was numb. Under these circumstances, it could be argued that the victim's use of his arm was not so impaired as to constitute "serious physical injury."

In sum, despite the strength of the People's case, there was a sound basis for counsel to argue that the victim did not suffer the requisite "serious physical injury" or "serious disfigurement." Moreover, each of the first-degree assault counts required proof of intent to cause the respective type of injury. Although the jury was certainly permitted to infer, from the nature of the victim's injuries (or from defendant's threatening statements as he was leaving the apartment) that defendant intended to inflict serious physical injury, it was not required to draw that inference (*see People v Steinberg*, 79 NY2d 673, 685 [1992]).

Defendant's counsel reasonably should have defended against the first-degree assault charges, and should have at least requested submission of second-degree assault as a lesser included offense. If the jury found that the People failed to

prove the requisite injury, the requisite intent, or both, but still found that defendant intentionally caused physical injury by means of a dangerous instrument, defendant would have been convicted of a class D felony (*see* Penal Law § 120.05 [2]). The People's case was strong, and, of course, defendant might well have been convicted of first-degree assault even had the jury also had the option of convicting him of a lesser offense. But defendant's counsel's error deprived the jury of that choice. The majority inexplicably ignores the fact that counsel accomplished little or nothing by only defending against the attempted murder charge, albeit successfully. The acquittal did not limit defendant's sentencing exposure under the circumstances of the case. He was still convicted of class B felonies and sentenced to the maximum permissible term of imprisonment.

Of course, I recognize that defendant was an extraordinarily uncooperative and disruptive client. Nevertheless, there is no indication that defendant's lack of cooperation impaired his attorney's ability to defend against the assault charges. Under all of the circumstances of this case, counsel's failure to make any arguments against the first-degree assault counts, and his failure to request second-degree assault as a lesser included offense, compromised defendant's right to a fair trial and deprived him of meaningful representation (*People v Caban*, 5 NY3d 143, 156 [2005]; *People v Hobot*, 84 NY2d 1021, 1022 [1995]). For the same reasons, defendant has also established a reasonable probability that the outcome at trial would have been different but for his counsel's errors (*see Strickland v Washington*, 466 US 668, 694 [1984]). I would therefore reverse, on the law, and remand the matter for a new trial.