Rel: February 10, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2022-2023

------------------------

## CR-2022-0914

------------------------

## Terrance Rashaun Moore

## v.

## State of Alabama

## Appeal from Lamar Circuit Court
## (CC-21-64)

WINDOM, Presiding Judge.

Terrance Rashaun Moore appeals his conviction for first-degree elder abuse, see § 13A-6-192, Ala. Code 1975.[1]  Moore was sentenced to 15 years in prison.

---

[1]Moore was acquitted of the offense of first-degree robbery.

On the evening of July 11, 2020, Brenda Hunt was concerned about a light-brown vehicle she did not recognize that had been parked in front of her house for approximately an hour. Hunt, who was 70 years old, was unsettled by the presence of the vehicle because she thought it may be connected to suspected drug activity in the neighborhood. Hunt walked outside to load some items into her vehicle, carrying with her a notepad and a pencil. Hunt was intent on writing down the license-plate number of the vehicle so that she could pass the information on to law enforcement.

Hunt loaded the items into the trunk of her vehicle and then turned to face the rear of the light-brown vehicle. Unaware that anyone was inside the vehicle, Hunt recorded its license-plate number on her notepad. Moore, though, was sitting inside the vehicle, and he saw Hunt writing down his vehicle's license-plate number. Moore exited his vehicle and approached Hunt. Moore asked Hunt if she had written down his license plate number, and Hunt admitted that she had. Moore grabbed Hunt by her arms and "twisted them" while cursing at her. (C. 101.) Hunt released the notepad to Moore, who tore off the page on which Hunt had written the license-plate number. Moore threw the notepad and pen

on the ground and told Hunt, "You can have that." (C. 101.) Moore then returned to his vehicle.

Moore's grabbing Hunt caused her to sustain tears in the skin on her forearms. The injury to Hunt's left forearm in particular bled profusely. Hunt returned to her house and telephoned her neighbor, Mary McKay. As McKay was on her way to Hunt's house, she saw Moore leave in the light-brown vehicle. McKay found Hunt inside her house crying and shaking. McKay testified that Hunt had a towel wrapped around her left arm. McKay contacted the Vernon Police Department, and Officer Eric Tew responded to the scene. Officer Tew summoned an ambulance, describing Hunt's apparent condition to be one of "discomfort." (R. 100.) Emergency medical personnel checked Hunt's arms for broken bones; however, they did not otherwise treat her injuries. Hunt did not go the hospital for medical treatment.[2]

Hunt's son, Wesley Hunt, picked her up and took her to his house, where his wife cleaned and bandaged Hunt's wounds. Wesley took photographs of Hunt's arms, which were admitted into evidence and

---

[2]The record contains conflicting testimony as to whether Hunt refused to go to the hospital for treatment or whether she was even asked by medical personnel if she wanted to go.

3

viewed by the jury.  Along with a tear in the skin on Hunt's left forearm, her arms were bruised.  Several days after the assault, Hunt went to the police department to give an official statement and to identify her assailant.  While there, police took additional photographs of Hunt's arms.  These photographs were also admitted into evidence and viewed by the jury.

Months after the assault, Hunt was diagnosed with cancer. Because of her diagnosis and judicial delays as a result of the COVID-19 pandemic, Hunt gave a video-recorded deposition during which she testified about the assault and her injuries.  Hunt passed away before trial, and the video of her deposition was played and a transcript provided for the jury.

In her deposition, Hunt testified that the wound to her left arm resulted in a scar.  Because Hunt wore long sleeves during her deposition, her scar was not visible on camera during her testimony.  Hunt displayed her scar to the prosecutor when he questioned her about it; however, an item in front of Hunt obstructed the view of the camera.  Hunt's relatives testified at trial that the scar remained until Hunt passed away.  Two

4

photographs of Hunt taken after the assault were admitted into evidence to show the scar.

On appeal, Moore argues that the circuit court erred in denying his motion for a judgment of acquittal. Moore asserts that his motion was due to be granted because the State failed to prove that Hunt had sustained a serious physical injury.

The circuit court's denial of Moore's motion for a judgment of acquittal must be reviewed by determining whether there was sufficient legal evidence before the jury at the time the motion was made from which the jury by fair inference could find the defendant guilty. Adams v. State, 336 So. 3d 673, 690 (Ala. Crim. App. 2020). "In deciding whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, the evidence must be reviewed in the light most favorable to the prosecution." Breckenridge v. State, 628 So. 2d 1012, 1018 (Ala. Crim. App. 1993) (citing Cumbo v. State, 368 So. 2d 871 (Ala. Cr. App. 1978)). The evidence in this case was largely uncontested; even so, this Court recognizes that " '[c]onflicting evidence presents a jury question which is not subject to review on appeal.' " Murphy v. State, 108

So. 3d 531, 543 (Ala. Crim. App. 2012) (quoting Barnes v. State, 571 So. 2d 372, 374 (Ala. Crim. App. 1990)).

First-degree elder abuse, a Class A felony, occurs when "[a] person … intentionally abuses or neglects any elderly person and the abuse or neglect causes serious physical injury to the elderly person."  § 13A-6-192, Ala. Code 1975.  An elderly person is defined as "[a] person 60 years of age or older."  § 13A-6-191(4), Ala. Code 1975.

Moore challenges the State's evidence only with respect to the element of "serious physical injury."  "Serious physical injury" is a "[p]hysical injury which creates a substantial risk of death, or which causes serious and protracted disfigurement, protracted impairment of health, or protracted loss or impairment of the function of any bodily organ."  § 13A-1-2(14), Ala. Code 1975.[3]  Here, there was no evidence indicating that Hunt's injuries had created a substantial risk of death or that she had suffered a protracted impairment of her health or of the function of a bodily organ.  Rather, the State offered evidence of Hunt's

_____

[3]Subsequent to Moore's offense against Hunt, the definition of "serious physical injury" in § 13A-1-2(14) was amended to include "a penetrating gunshot wound inflicted by a firearm as defined in Section 13A–8–1."  Act No. 2022-401, Ala. Acts 2022.

6

scarring to show that she had suffered a "serious and protracted disfigurement."

This Court recognized in <u>Hunter v. State</u>, 866 So. 2d 1177 (Ala. Crim. App. 2003), the dearth of caselaw in Alabama on "serious and protracted disfigurement":

> "'Here, we focus on the "serious and protracted disfigurement" element of [§ 13A-6-20, Ala. Code 1975, defining assault]. "Disfigurement" is defined as "[a]n impairment or injury to the appearance of a person or thing." <u>Black's Law Dictionary</u> 480 (7th ed. 1999). "Protracted" is defined as "prolong[ed] in time or space." <u>Merriam-Webster's Collegiate Dictionary</u>. (10th ed. 1999). ...

> "'Most Alabama cases discussing "serious physical injury" concern "physical injury which creates a substantial risk of death, or ... protracted impairment of health, or protracted loss or impairment of the function of any bodily organ." Thus, there is little guidance in Alabama caselaw concerning what constitutes a serious and protracted disfigurement. Some cases discussing serious and protracted disfigurement also discuss the substantial risk of death or protracted impairment of health. <u>See</u> <u>Lee v. State</u>, 727 So. 2d 887 (Ala. Crim. App. 1998) (in which this Court implied that the mere presence of a scar resulting from a gunshot wound will not elevate "physical injury" to "serious physical injury"). Other cases do not indicate which part of the statute is implicated. <u>See</u> <u>Pope v. State</u>, 586 So. 2d 1003 (Ala. Crim. App. 1991) (holding that testimony that the victim was hospitalized for three days and was unable to work for one and one-half months and that staples had to be used to hold wound together, along with victim's exhibition of his scars to the jury, was sufficient to present a jury question on the issue of the existence of serious physical injury).

7

"'Other jurisdictions whose definition of serious physical injury, like Alabama's, include a serious and protracted disfigurement have found a scar sufficient to constitute serious physical injury. See State v. Nival, 42 Conn. App. 307, 678 A.2d 1008 (1996) (where jury observed the victim's one-half-inch facial scar and evidence was presented that the scar was permanent there was sufficient evidence to create jury question as to whether the victim had suffered a serious physical injury); State v. Anderson, 370 N.W. 2d 703 (Minn. Ct. App. 1985) (a long scar present two and one-half years after the injury was a serious permanent disfigurement); State v. Bledsoe, 920 S.W.2d 538 (Mo. Ct. App. 1996) (a one-and-one-half-inch cut on the victim's chin leading to scarring, a one-and-one-half-inch scar on lower lip, and a scar between her eyes constituted serious disfigurements); State v. Pettis, 748 S.W.2d 793 (Mo. Ct. App. 1988) (holding that serious physical injury as applied to first-degree assault would include a four-inch permanent scar as a result of a knife wound); People v. Wade, 187 A.D.2d 687, 590 N.Y.S.2d 245 (1992) (a scar that was visible eight months after victim's face was cut with a razor from ear to mouth was serious permanent disfigurement); People v. Greene, 488 N.Y. S.2d 812, 111 A.D.2d 183 (1985) (serious physical injury includes a knife wound on the victim's neck that required 120 stitches to close and that resulted in a substantial keloid scar).'"

Hunter, 866 So. 2d at 1179-80. This Court's opinion in Hunter makes it clear that scarring may constitute a disfigurement sufficient to satisfy the element of "serious physical injury." Further, the Alabama Supreme Court has held, after quoting heavily from Hunter, that "testimony from a lay witness can be sufficient to establish ['serious and protracted

disfigurement'] for submission of the case to a jury." Reck v. State, 84 So. 3d 155, 158 (Ala. 2011).

Scars, by their nature, tend to be protracted disfigurements – Hunt's son testified that she had a scar on her left forearm until she died, some 19 months after the assault. The question in this case is whether there was sufficient evidence indicating that Hunt suffered serious scarring due to Moore's assault. Although this Court has addressed whether a scar could constitute a "serious physical injury," Alabama courts have set forth little guidance on what constitutes a serious disfigurement.

The legislative choice to qualify disfigurement with "serious" evidences an intent to require the presence of some other factor beyond a scar to render the scar a "serious" disfigurement. Compare Hunter, supra (pronounced scar on victim's face from knife cut was a "serious physical injury") and Dailey v. State, 316 So. 3d 253 (Ala. 2020) (scarring from hot grease along with other injuries sufficient to establish "serious physical injury") with Lee v. State, 727 So. 2d 887 (Ala. Crim. App. 1998) (scar from bullet wound not "serious physical injury") and Vo. v. State, 612 So. 2d 1323 (Ala. Crim. App. 1992) (bullet wound through arm was

not "serious physical injury").  Although ordinarily a factual question for the jury, there is a legal distinction between "physical injury" and "serious physical injury" that is not a purely subjective matter.

As this Court considers the difference between disfigurement and serious disfigurement, it is important to establish the meaning of "serious," specifically as it relates to an injury.  Black's Law Dictionary 1371 (9th ed. 2009) defines "serious," in pertinent part, as "dangerous; potentially resulting in death or other severe consequences."  Miriam-Webster's Collegiate Dictionary (11th ed. 2020) defines "serious," in pertinent part, as "having important or dangerous possible consequences" and "excessive or impressive in quality, quantity, extent, or degree."  Other jurisdictions have applied similar definitions to "serious" as a qualifier to "disfigurement" in their statutes.  See Williams v. State, 248 Ga. App. 316, 318, 546 S.E. 2d 74 (2001) ("grave, or great"); State v. Silva, 75 Haw. 419, 864 P.2d 583 (1993) ("giving cause for apprehension; critical"); State v. Clark, 974 A.2d 558, 573 (R.I. 2009) ("grave and not trivial in quality or manner."); People v. McKinnon, 15 N.Y.3d 311, 937 N.E.2d 524 (2010) (stating that "serious disfigurement" is an injury that would make the victim's appearance distressing or

10

objectionable to a reasonable person observing her); Hernandez v. State, 946 S.W.2d 108, 113 (Texas App. 1997) (a "significant cosmetic deformity caused by the injury.").

Thus, to disfigure seriously must be to inflict some harm substantially greater than the minimum required for disfigurement. The disfigurement does not have to rise to the level of "severe" disfigurement such that it is shocking or extremely unsightly to a reasonable person; the disfigurement should, however, be significant and of such a character that it substantially detracts from the appearance of the person bearing the disfigurement. Some factors to consider in determining the seriousness of a disfigurement in the form of a scar include its permanence, location, size, and general appearance or nature. Other jurisdictions have considered the cumulative effect of several disfiguring features in assessing seriousness. State v. Anderson, 16 Conn. App. 346, 547 A.2d 1368 (1988); Levin v. State, 334 Ga. App. 71, 778 S.E.2d 238 (2015). Serious disfigurement does not necessarily have to be permanent or in a location that is readily visible to others. In offering guidance, this Court does not strive to set forth a strict formula for weighing factors. For example, a highly prominent scar in a less visible location may

constitute serious disfigurement, just as a less prominent scar in a more visible location – such as one's face – may constitute serious disfigurement.

With these principles in mind, we turn to the evidence of the injuries sustained by Hunt as a result of Moore's assault. The record contains pictures of the injuries taken the day of the assault and a few days after the assault. The pictures depict bruises and some abrasions. Hunt's left arm sustained the most significant injury with a tear to her skin. Hunt did not receive any professional medical attention to treat the damage to her skin. Hunt displayed her injury to the prosecutor at her deposition, though the jury was unable to view it as her arm was blocked from the camera. Two photographs of Hunt taken after the wound on her left arm had healed were admitted into evidence; however, the photographs are of Hunt at a distance of several feet and do not clearly depict her scar.

This limited record is not sufficient to support a finding of serious disfigurement. It shows no more than that Hunt had a scar of approximately an inch on her forearm. Although it is certainly a disfigurement, no basis appears in the record for finding it to be "serious"

as we define the term. The mere existence of such a scar, considering its size and location, would not make the victim's appearance distressing or objectionable to a reasonable person observing her. To declare this evidence sufficient to establish a serious disfigurement would be to undermine the legislative intent behind the definition of "serious physical injury" in § 13A-1-2(14), Ala. Code 1975.

It is neither this Court's intent to trivialize Hunt's injuries nor to condone Moore's actions. Certainly, this experience and disfigurement were significant to Hunt. Nonetheless, the evidence presented does not support a conviction for first-degree elder abuse as the statute is written. Therefore, it is the judgment of this Court that the circuit court erred in denying Moore's motion for a judgment of acquittal and that Moore's conviction for first-degree elder abuse is due to be reversed.

However, the circuit court's charge to the jury also included an instruction on the lesser-included offense of second-degree elder abuse. According to § 13A-6-193(a)(1), Ala. Code 1975, "[a] person commits the crime of elder abuse in the second degree if he …[i]ntentionally abuses or neglects any elderly person and the abuse or neglect causes physical injury to the elderly person." A "physical injury" is an "[i]mpairment of

13

physical condition or substantial pain." § 13A-1-2(12), Ala. Code 1975. The evidence presented at trial would support a finding that Hunt suffered a "physical injury." Therefore, we remand this cause to the circuit court with instructions that Moore's conviction for first-degree elder abuse be set aside, that Moore be adjudged guilty of second-degree elder abuse, and that Moore be sentenced, in open court with the presence of counsel, for that offense. See §§ 13A-6-193 and 13A-5-6, Ala. Code 1975. See Brand v. State, 960 So. 2d 748 (Ala. Crim. App. 2006) (holding that appellate courts have the authority to reverse a conviction and order an entry of judgment on a lesser-included offense).[4] The trial court shall take all necessary action to see that the circuit clerk makes due return to this Court at the earliest possible time and within 42 days after the release of this opinion. The return to remand shall include a transcript of the remand proceedings conducted by the circuit court.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Kellum, Cole, and Minor, JJ., concur. McCool, J., recuses himself.

---

[4]Moore also argued on appeal that a presentence report was never produced and that, therefore, he was improperly sentenced by the circuit court. In light of our reversal, we pretermit discussion of this issue.